IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA MICHAEL CULLEY, | : | |
| Petitioner | : | No. 1:23-cv-01513 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| MELINDA ADAMS, Superintendent of | : | |
| SCI Mercer, et al., | : | |
| Respondents | : | |

**MEMORANDUM**

Currently before the Court are pro se Petitioner Joshua Michael Culley ("Culley")'s

petition for a writ of habeas corpus under 28 U.S.C. § 2254 as well as his motion for a status

conference. For the reasons stated below, the Court will dismiss in part and deny in part

Culley's Section 2254 habeas petition, deny as moot Culley's motion seeking a status

conference, decline to issue a certificate of appealability, and direct the Clerk of Court to close

this case.

I.    **BACKGROUND**

A.    **State Court Proceedings**

On November 3, 2017, a jury sitting in the Court of Common Pleas of Cumberland

County ("CCP") found Culley guilty of rape by forcible compulsion (18 Pa. C.S. § 3121(a)(1)),

sexual assault (18 Pa. C.S. § 3124.1), and unlawful restraint – serious bodily injury (18 Pa. C.S.

§ 2902(a)(1)). See (Doc. No. 1 at 1); Commonwealth v. Culley, No. 1081 MDA 2018, 2019 WL

2564536, at *1 (Pa. Super. Ct. June 21, 2019) (unpublished) ("Culley I"); Commonwealth v.

Culley, No. 121 MDA 2022, 2022 WL 16832485, at *1 (Pa. Super. Ct. Nov. 9, 2022)

(unpublished) ("Culley II"); Docket, Commonwealth v. Culley, No. CP-21-CR-0000311-2017

(Cumberland Cnty. Ct. Com. Pl. <u>filed</u> Feb. 3, 2017) ("CCP Dkt."). The facts underlying Culley's

convictions were summarized as follows:

> The victim met Culley when she started working at Renewal by Anderson in November of 2016. Culley was one of the employees assigned to train her. During a cigarette break on the Friday of her first week, the victim and Culley exchanged phone numbers and made plans to hang out after work.
>
> The victim and her cousin, S.S., later went to Culley's parent's home. Culley was waiting outside for them when they arrived and led them into his room, which was located in the basement attached to the garage.
>
> Shortly after getting there, Culley went upstairs and brought down a bottle of whiskey. The victim testified that she had about five shots, and both Culley and S.S. had more. Eventually, S.S. became ill and spent the remainder of the night in the bathroom. Thereafter, the victim periodically checked in on her cousin in the bathroom.
>
> Around the third time the victim checked in on S.S., Culley pushed her back onto his bed and climbed on top of her. He took her pants and underwear down and began having vaginal intercourse with her. When the victim told him to stop and yelled for help he hit her in the face. S.S. heard her cousin yelling, but was too incapacitated to help. Culley held her down by holding both of her arms above her head with one hand, and at one point held her throat down with the other hand. The assault lasted around five minutes, at which time Culley went upstairs. The victim collected her things and carried S.S. up the stairs they had come down and drove home.
>
> After leaving work the next day, the victim went to Holy Spirit hospital for a rape kit. She later went home and told her mother what had happened.
>
> On Sunday morning, the victim went to the Silver Spring Township Police Department where she spoke with Detective Andrew Bassler and gave a written statement.
>
> While at the police station, the victim made a consensual (recorded) phone call to Culley, with Detective Bassler and Detective Carrie Webber present. Culley ultimately returned her call after she texted him that she needed to talk. During the phone call, Culley stated, "I don't want this to sound completely horrible, but did you like agree at all at first or did I like rape you."

See <u>Culley I</u>, 2019 WL 2564536, at *1.

On February 6, 2018, the CCP sentenced Culley to an aggregate period of state confinement for a minimum of 92 months to a maximum of 184 months, to be followed by 60 months of state probation.  See (Doc. No. 1 at 1); Culley I, 2019 WL 2564536, at *1.[1]  After receiving an extension of time, Culley timely filed post-sentence motions on May 21, 2018, which the CCP denied on June 7, 2018.  See (Doc. Nos. 1 at 2; 12-2; 12-4); Culley I, 2019 WL 2564536, at *1; CCP Dkt.  Culley then timely filed a notice of appeal to the Pennsylvania Superior Court on July 3, 2018.  See (Doc. Nos. 1 at 2–3; 12-5; 12-9); Culley I, 2019 WL 2564536, at *1; CCP Dkt.

Culley raised two issues on direct appeal.  See Culley I, 2019 WL 2564536, at *2, 3.  First, he claimed that there was insufficient evidence to sustain the jury's verdict.  See id. at *2.  Second, he argued that the CCP erred "by denying defense counsel the right to refresh the victim's recollection."  See id. at *3.

The Superior Court, via an unpublished decision, determined that Culley waived his sufficiency-of-the-evidence claim because he failed to properly raise it in his Pennsylvania Rule of Appellate Procedure 1925(b) statement of matters complained of on appeal.  See id. at *2.[2]

---

[1]  This aggregate sentence constitutes the sentence the CCP imposed for Culley's rape conviction.  See Culley I, 2019 WL 2564536, at *1; CCP Dkt.  The CCP imposed concurrent sentences for Culley's sexual assault and unlawful restraint convictions.  See Culley I, 2019 WL 2564536, at *1; CCP Dkt.  In addition, the CCP imposed a period of 48 months' probation on Culley's unlawful restraint conviction, which was ordered to run consecutive to his incarceration.  See Culley I, 2019 WL 2564536, at *1; CCP Dkt.  It is unclear from the docket and state court records whether the CCP ordered that this period of probation would run consecutive to Culley's 60 months of probation for his rape conviction.

[2]  Rule 1925(b) allows a trial court seeking "clarification of [an appellant's] errors complained of on appeal" to "enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal."  See Pa. R. App. P. 1925(b).  The appellant's statement must, inter alia, "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."  See Pa. R. App. P. 1925(b)(4)(ii).  Any "[i]ssues not included in the Statement and/or not raised

3

The Superior Court also explained that even if it construed Culley's sufficiency-of-the-evidence claim as a challenge to the weight of the evidence, he could not obtain appellate relief because he failed to first raise this claim with the CCP.  See id.

As for Culley's second appellate claim, the Superior Court concluded that it lacked merit because it was "completely belied by the record."  See id. at *3.  The Superior Court pointed out that the CCP did not deny Culley's counsel the right to refresh the victim's recollection; rather, it was "evident from the trial testimony that defense counsel explicitly decided on his own not to refresh the victim's recollection with the recording of her interview with Detective Bassler."  See id.  Moreover, although Culley argued that the CCP "suggested" that the interview must be played in its entirety for the jury, the Superior Court explained that the trial transcript showed that the CCP never "indicate[d] that it would require playing the entire video for the jury.  On the contrary, the [CCP] specifically excluded the jury from hearing any part of that video and only made reference to the victim being able to watch the entire video."  See id. (citing N.T., Feb. 21, 2018, at 76–77).  Accordingly, the Superior Court determined that Culley's claims did not merit relief, and it affirmed his judgment of sentence.  See id.

Following the Superior Court's decision, Culley filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on December 31, 2019.  See (Doc. No. 12-10); Commonwealth v. Culley, 222 A.3d 751 (Pa. 2019) (unpublished table

---

in accordance with the provisions of [Rule 1925(b)(4)] are waived."  See Pa. R. App. P. 1925(b)(4)(vii); see also Commonwealth v. Tyack, 128 A.3d 254, 260 (Pa. Super. Ct. 2015) ("If Appellant wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. . . . [If a Rule] 1925(b) statement . . . does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal]." (citation omitted)).

decision); Culley II, 2022 WL 16832485, at *1.  Culley did not seek further review by the United States Supreme Court.  See (Doc. No. 1 at 3).

On June 1, 2020, Culley filed his first petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA").  See (id.; Doc. No. 12-12); Culley II, 2022 WL 16832485, at *2; CCP Dkt.  The CCP appointed counsel to represent Culley,[3] and PCRA counsel filed an amended PCRA petition on January 12, 2021.  See (Doc. No. 12-13); Culley II, 2022 WL 16832485, at *2; CCP Dkt.  In his counseled amended PCRA petition, Culley asserted that his trial counsel was ineffective for failing to: (1) present character witnesses; (2) object to the Commonwealth providing the defense with "relevant witness interviews and/or written statements by [the] victim and her cousin" on the day of trial; (3) file a motion to suppress the recorded telephone conversation between Culley and the victim; (4) address the Commonwealth's allegedly false and misleading opening statement; (5) "explore whether [the victim's] sexual infidelity to her boyfriend was a possible reason to fabricate [her] complaint"; and (6) question the victim about her "trial testimony that was inconsistent with prior statements and testimony and with the statements of other witnesses, including relevant witness interviews and/or written statements by her and her cousin."  See (Doc. Nos. 12-13 at 3–5); see also (Doc. Nos. 12-14 at 4–5; 12-16 at 3–4).

The CCP held an evidentiary hearing on Culley's amended PCRA petition on August 16, 2021.  See (Doc. No. 12-27); Culley II, 2022 WL 16832485, at *2.  Following the hearing, the Commonwealth filed a brief in opposition to the amended petition on September 29, 2021, and

---

[3]  Another Court of Common Pleas Judge was assigned to Culley's PCRA proceedings.  See (Doc. Nos. 12-24 at 2 (indicating that the Honorable Thomas A. Placey presided over Culley's jury trial); 12-27 at 2 (indicating that the Honorable Albert H. Masland presided over Culley's PCRA evidentiary hearing)); CCP Dkt.

Culley filed a brief in support of his amended petition on October 4, 2021. See (Doc. Nos. 12-14; 12-15); CCP Dkt. On December 17, 2021, the CCP issued an Opinion and Order denying the amended PCRA petition. See (Doc. No. 12-16 at 2–12); Culley II, 2022 WL 16832485, at *2.

Culley timely appealed from the CCP's denial of his amended PCRA petition to the Superior Court on January 18, 2022. See (Doc. No. 12-17); Culley II, 2022 WL 16832485, at *2. Culley raised the following issues on appeal:

1. Did the [CCP] err by denying Culley's claims that [t]rial [c]ounsel was ineffective for failing to call character witnesses to the stand, even after PCRA hearing testimony that [Culley] and his father had urged otherwise and had several (including female witnesses) available and willing to testify on behalf of [Culley], and when [t]rial counsel['s] . . . hearing testimony indicated that he knew that [Culley] and his father wanted character witness testimony[?]

2. Did the [CCP] err by denying Culley's claims that [t]rial [c]ounsel was ineffective for failing to adequately address [a] possible [Brady v. Maryland, 373 U.S. 83 (1963)] [sic] violation including delayed witness statements and as a result continued on with the trial without proper preparation, even when [t]rial counsel . . . admitted in hearing testimony regarding this issue: "I said I made some mistakes. And that may have been one of the bigger ones . . . ?"

3. Did the [CCP] err by denying Culley's claims that [t]rial [c]ounsel was ineffective for failing to adequately explore whether [the victim]'s sexual infidelity to her boyfriend was a possible reason to fabricate complaint [?]

4. Did the [CCP] err by denying Culley's claims that [t]rial [c]ounsel was ineffective for failing to adequately question [the victim] regarding inconsistent statements including those that she made at the time of the trial [?]

5. Did the [CCP] err by denying Culley's claims that [t]rial [c]ounsel was ineffective for failing to adequately address and/or file a motion to suppress questionable one-party-consent recorded phone calls [?]

6. Did the [CCP] err by denying Culley's claims that [t]rial [c]ounsel was ineffective for failing to adequately address Commonwealth's false and/or misleading opening statement regarding semen that was found in [the victim ?]

See Culley II, 2022 WL 16832485, at *2 (quoting Culley's Appellate Br. at 5); see also (Doc. No. 12-19 at 6).

6

On November 9, 2022, the Superior Court affirmed the denial of Culley's amended PCRA petition via an unpublished decision. See Culley II, 2022 WL 16832485, at *1, 8. Culley then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on June 27, 2023. See Commonwealth v. Culley, 300 A.3d 1005 (Pa. 2023) (unpublished table decision). It does not appear that Culley filed a petition for a writ of certiorari with the United States Supreme Court.

**B.      Federal Habeas Proceedings**

Culley commenced the instant action by filing his Section 2254 habeas petition on August 18, 2023.[4] (Doc. No. 1.) Culley contends that his trial counsel was ineffective for failing to (1) call character witnesses; (2) "properly address" the Commonwealth's late discovery and purported Brady violation(s); and (3) file a motion to suppress the recorded telephone conversation between him and the victim. See (id. at 5, 7, 8, 16–18). Culley also alleges that the prosecutor committed prosecutorial misconduct by: (1) refusing to have the victim testify during Culley's preliminary hearing; (2) asserting that they had never offered him a plea deal after receiving a counter-offer from his new trial counsel; (3) lying in an affidavit to cause the CCP to revoke his bail; (4) providing the defense with discovery of certain materials on the first day of trial; (5) not disclosing a "third interview" with S.S. until the second day of trial; (6) including "inflammatory and prejudicial blatant lies" in their opening statement to the jury; and (7) relying on an unlawfully recorded telephone call to support their case. See (id. at 10, 20–22). For relief,

---

[4] The federal "prisoner mailbox rule" provides that a pro se prisoner's habeas petition is deemed filed "at the time [they] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Here, Culley includes a declaration that he placed his petition in the prison mail system on August 18, 2023. See (Doc. No. 1 at 15). As such, the Court uses August 18, 2023, as the petition's filing date, even though the Clerk of Court did not docket it until September 13, 2023.

Culley seeks an Order vacating his sentence and remanding his case for a new trial.  See (id. at 15).

On October 5, 2023, the Court issued an Administrative Order with Notice of Limitations on Filing of Future Petitions Under 28 U.S.C. § 2254, which required Culley to sign and return a notice of election indicating whether he wanted to withdraw his current petition or have the Court rule on his petition as filed.  See (Doc. No. 3).  Culley timely filed a notice stating that he wished to have the Court rule on his petition as filed, which the Clerk of Court docketed on October 17, 2023.  See (Doc. No. 4).

The Court issued an Order on October 25, 2023, which, inter alia, required Respondents to file an answer to Culley's habeas petition.  See (Doc. No. 5).  After receiving an extension of time (Doc. Nos. 7, 8), Respondents filed their response in opposition to the petition along with various documents from the state court record on January 16, 2024 (Doc. No. 12).  Culley, after also receiving an extension of time (Doc. Nos. 13, 14), filed a reply brief in further support of his habeas petition on March 8, 2024 (Doc. No. 15).

According to the Pennsylvania Department of Corrections Supervised Individuals Locator (https://inmatelocator.cor.pa.gov), Culley was released on parole on February 15, 2026.  Soon thereafter, Culley filed a notice of change of address with the Clerk of Court.  (Doc. No. 17.)  On April 14, 2026, Culley filed a motion for a status conference.  (Doc. No. 18.)  Culley's motion and habeas petition are ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Section 2254 Habeas Petitions

A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of their confinement and seeking "immediate release or a

speedier release from that imprisonment." See Preiser v. Rodriguez, 411 U.S. 475, 498–99 (1973); Leamer v. Fauver, 288 F.3d 532, 542–44 (3d Cir. 2002). A district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that [they are] in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). Claimed violations of state law, standing alone, will not entitle a petitioner to relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Furthermore, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must have exhausted the remedies available to them in the courts of the state. See 28 U.S.C. § 2254(b)(1)(A).

These same principles that limit habeas relief to errors of a constitutional dimension also require federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts during state criminal proceedings. There are two critical components to this deference mandated by Section 2254.

First, with respect to legal rulings by state courts, habeas relief is unavailable to a petitioner for any claim that has been adjudicated on its merits in state court unless it can be shown that the state court decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see id. § 2254(d)(1); or (2) was "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see id. § 2254(d)(2). Applying this deferential standard of review, federal courts

frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts.  See Rice v. Collins, 546 U.S. 333, 338–39 (2006) (concluding that state court's decision on petitioner's peremptory challenge based on Batson v. Kentucky, 476 U.S. 79 (1986), "was not an unreasonable determination of the facts in light of the evidence presented to the state court"); see also Warren v. Kyler, 422 F.3d 132, 139–40 (3d Cir. 2005) (determining that state court's decision to apply presumption in the applicable version of 42 Pa. C.S. § 9714 was not "an objectively unreasonable application of clearly established federal law"); Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir. 2002) ("We agree with the District Court that the state court decisions are not contrary to clearly established federal law.").

In addition, the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous.  See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made during criminal proceedings.  See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam) (explaining that under the applicable standard, "we have not the slightest hesitation in saying that the trial court's conclusion as to [the defendant's] competency was fairly supported by the record" (citation and internal quotation marks omitted)).  This principle applies to factual findings made both by the state trial court and state appellate courts.  See Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir.

10

2006) ("Generally, federal courts defer to state appellate court determinations of fact."). Thus, this Court may not reassess credibility determinations made by the state courts and must give equal deference to both the explicit and implicit factual findings made by the state courts. See Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000) ("[W]e must provide the same presumption of correctness required by § 2254(e)(1) to the state courts' implicit factual findings as we provide to express findings of the state courts." (citing Campbell v. Vaughn, 209 F.3d 280, 285–86 (3d Cir. 2000))). Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." See Rolan, 445 F.3d at 681.

## B.    Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defence." See U.S. Const. amend VI. However, "[t]hat a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy [this] constitutional command." See Strickland v. Washington, 466 U.S. 668, 685 (1984). Rather, "[t]he Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." See id. For that reason, the Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" See id. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

To show that a petitioner was denied the effective assistance of counsel, they must satisfy a two (2)-prong standard, as set forth by the Supreme Court in Strickland. Under the first prong of the Strickland standard, a petitioner must show that "counsel's performance was deficient."

11

See id. at 687.  This requires a showing that "counsel's representation fell below an objective

standard of reasonableness."  See id. at 687–88; Williams v. Taylor, 529 U.S. 362, 390–91

(2000).  Indeed, "[c]ounsel's performance is deficient only "when counsel made errors so serious

that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  See

McKernan v. Superintendent Smithfield SCI, 849 F.3d 557, 564 (3d Cir. 2017) (quoting

McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 102 (3d Cir. 2012)).  This requires the

"reasonably effective assistance" of counsel:

> [Courts] consult no checklist, as no catalog can "satisfactorily take [into] account .
> . . the range of legitimate decisions regarding how best to represent a criminal
> defendant."  Id. at 688–89[.]  That is why [the courts'] review of counsel's
> performance is "highly deferential," United States v. McCoy, 410 F.3d 124, 135
> (3d Cir. 2005), for "it is all too easy for a court" to find a certain act or omission
> unreasonable after the defense ultimately proves unsuccessful, Strickland, 466 U.S.
> at 689[;] see also Rolan[, 445 F.3d at 681–82] ("[C]ounsel's strategic choices will
> not be second-guessed by post-hoc determinations that a different trial strategy
> would have fared better.").

See Rogers v. Superintendent Greene SCI, 80 F.4th 458, 462 (3d Cir. 2023).

Under the second prong of the Strickland standard, a petitioner must show that counsel's

"deficient performance prejudiced [his] defense."  See 466 U.S. at 687.  "Simply 'show[ing] that

the errors had some conceivable effect on the outcome of the proceeding' is not enough, as

'[v]irtually every act or omission of counsel would meet that test.'"  Rogers, 80 F.4th at 464

(quoting Strickland, 466 U.S. at 693).  This prong requires a "showing that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  See id.

Thus, the petitioner must show that there is "a reasonable probability that," if not for counsel's

errors, "the result of the proceeding would have been different."  See id. at 694.  A reasonable

probability, in turn, "is a probability sufficient to undermine confidence in the outcome."  See id.

This "requires a substantial, not just conceivable, likelihood of a different result."  See Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

A habeas petitioner must satisfy both prongs and a failure to do so is fatal to his Strickland claims.  See 466 U.S. at 687 (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable"); Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). Additionally, a court is permitted to choose which prong of the Strickland standard to apply first, and a court may reject an ineffective assistance claim on the ground that the petitioner was not prejudiced without ever addressing whether counsel's performance was deficient.  See 466 U.S. at 697.  In other words:

> Although [the Supreme Court has] discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which [the Supreme Court expects] will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

See id.

For purposes of AEDPA, see 28 U.S.C. § 2254(d)(1), the "clearly established Federal law" as to an ineffective assistance of counsel claim is the two (2)-prong standard established by Strickland.  See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (citation omitted); Cullen, 563 U.S. at 189 (explaining that "[t]here is no dispute that the clearly established federal law" for an ineffective assistance of counsel claim under the Sixth Amendment is Strickland).  Although the Pennsylvania Supreme Court uses slightly different language than that of the United States

Supreme Court to address ineffective assistance of counsel claims, Pennsylvania's standard is consistent with the federal standard set forth in Strickland.  See Werts v. Vaughn, 228 F.3d 178, 202–04 (3d Cir. 2000) (holding that a Pennsylvania state court applying Pennsylvania's ineffective assistance of counsel standard did not contradict Strickland); Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005) (citing Werts, 228 F.3d at 204, and noting that the Third Circuit has "previously ruled that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland")).

Finally, it bears emphasis that "[s]urmounting Strickland's high bar is never an easy task," see Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable under [Section] 2254(d) is all the more difficult." See Harrington v. Richter, 562 U.S. 86, 105 (2011).  Accordingly, when the state court has decided an ineffective assistance of counsel claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  Further, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." See id. (citation omitted).  This has been referred to by the Supreme Court as "'doubly deferential.'"  See, e.g., Cullen, 563 U.S. at 190 (explaining that "[w]e take a highly deferential look at counsel's performance . . . through the deferential lens of Section 2254(d)" (citation, internal citation, and internal quotation marks omitted)).[5]  The Court must apply a high level of

---

[5]  Where a petitioner's claimed violations of federal law were not adjudicated on the merits by the state courts, AEDPA's deferential standard, see 28 U.S.C. § 2254(d), does not apply, and the

deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate.  See Dunn v. Reeves, 594 U.S. 731, 739 (2021); Knowles, 556 U.S. at 123 (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)).  Thus, the Court may only grant habeas corpus relief if "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision."  See Dunn, 594 U.S. at 739–40 (quoting Harrington, 562 U.S. at 101).

### C.    Exhaustion of State Remedies and Procedural Default

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the statutory exhaustion requirement providing that habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  See 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  This exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts, 228 F.3d at 192; Picard v. Connor, 404 U.S. 270, 275–76 (1971).

Section 2254 codifies this principle by requiring that a habeas petitioner exhaust the remedies available in the courts of the State, see 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" their claims in "one complete round of the state's established appellate review process," before bringing them in federal court.  See O'Sullivan, 526 U.S. at 845 (stating that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the

---

district court reviews the petitioner's claims de novo.  See Cone v. Bell, 556 U.S. 449, 472 (2009) (citations omitted); Han Tak Lee v. Glunt, 667 F.3d 397, 403 (3d Cir. 2012).

federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process"). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. See Picard, 404 U.S. at 278 ("[T]he substance of a federal habeas corpus claim must first be presented to the state courts."); see also McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. See Brown v. Cuyler, 669 F.2d 155 (3d Cir. 1982); Zicarelli v. Gray, 543 F.2d 466 (3d Cir. 1976). Instead, both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. See Picard, 404 U.S. at 277; Brown, 669 F.2d at 158–61.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" McCandless, 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)). Nevertheless, Section 2254 habeas petitioners "are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse [their] default." See id. (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991). To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded their efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if the petitioner can demonstrate that the outcome of the state

16

proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," see Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim to prevent a fundamental miscarriage of justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  See Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  See Hubbard v. Pinchak, 378 F.3d 333, 339–40 (3d Cir. 2004).

In general, attorney errors in collateral proceedings do not establish cause to excuse a procedural default unless the petitioner can meet the narrow exception to this general rule set forth in Martinez v. Ryan, 566 U.S. 1 (2010).  Under Martinez, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," see id. at 9, if the petitioner can satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," see id. at 14; and that the petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding.  See id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014).

17

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." See Workman v. Superintendent Albion SCI, 915 F.3d 928, 937–38 (3d Cir. 2019); see also Martinez, 566 U.S. at 13–14. A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under the first prong of the standard established in Strickland. See Preston v. Superintendent Graterford SCI, 902 F.3d 365, 376 (3d Cir. 2018); see also Workman, 915 F.3d at 937–38.

## III.    DISCUSSION

### A.    Whether Culley's Petition is Moot Due to His Release on Parole

As indicated above, Culley was released on parole on February 16, 2026. Therefore, the Court will address whether Culley's habeas petition is moot due to his release on parole.

"Article III of the [United States] Constitution limits federal 'judicial Power' to the adjudication of 'Cases' or 'Controversies.'" Abreu v. Superintendent Smithfield SCI, 971 F.3d 403, 406 (3d Cir. 2020) (quoting Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009)). "For a case or controversy to exist, a petitioner, throughout each stage of the litigation, 'must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision.'" Id. (quoting DeFoy v. McCullough, 393 F.3d 439, 442 (3d Cir. 2005)). Consequently, "a habeas corpus petition generally becomes moot when a prisoner is released from custody because the petitioner has received the relief sought." See id. (citing DeFoy, 393 F.3d at 441); see also Hamilton v. Bromley, 862 F.3d 329, 335 (3d Cir. 2017) (explaining that mootness is "a doctrine that 'ensures

18

that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit,' and which is 'concerned with the court's ability to grant effective relief'" (quoting Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 476 (3d Cir. 2016) and County of Morris v. Nationalist Movement, 273 F.3d 527, 533 (3d Cir. 2001))).

Nevertheless, a petitioner who has been released from custody "may obtain judicial review of a [habeas] petition by showing that [they] continue[] to suffer from secondary or collateral consequences of [their] conviction." See Abreu, 971 F.3d at 406 (citations omitted). Generally speaking, "collateral consequences will be presumed when the [petitioner] is attacking [their] conviction while still serving the sentence imposed for that conviction [and] . . . where the[y are] attacking that portion of [their] sentence that is still being served." See id. (citing United States v. Jackson, 523 F.3d 234, 242 (3d Cir. 2008)). Once a petitioner has been released, however, the Court does "not presume that a conviction carries collateral consequences." See Abreu, 971 F.3d at 406 (citing Burkey v. Marberry, 556 F.3d 142, 148 (3d Cir. 2009)). Instead, the Court "must 'address[] the issue of collateral consequences in terms of the "likelihood" that a favorable decision would redress the injury or wrong[,]'" and "[i]t is not enough if 'collateral consequences proffered by the petitioner' amount to 'a possibility rather than a certainty or even a probability.'" See id. (quoting Burkey, 556 F.3d at 148).

Here, Culley's release on parole does not moot his Section 2254 petition because:

> "[I]n the criminal context, an individual who is on parole or released on his or her own recognizance is deemed in custody because of the significant restrictions imposed on his or her freedom." Kumarasamy v. Att'y Gen. of U.S., 453 F.3d 169, 172 (3d Cir. 2006). A petitioner's release on parole may render his habeas claims moot where release on parole is the only relief sought. See, e.g., Razzoli v. FCI Allenwood, 200 F. App'x 166, 169 (3d Cir. 2006).

See Wilson v. Delbalso, No. 19-cv-05205, 2021 WL 3777124, at *2 n.4 (E.D. Pa. June 29, 2021), report and recommendation adopted, 2021 WL 3771871 (E.D. Pa. Aug. 24, 2021); see

19

also Harris v. Lagana, No. 13-cv-05063, 2015 WL 4413085, at *2 (D.N.J. July 16, 2015) (explaining that the "custody" requirement for habeas corpus relief "is defined not only as physical confinement, but includes such limitations on a person's liberty as those imposed during parole"). Culley's requests for relief include more than simply his immediate release from incarceration; accordingly, his habeas petition is not moot despite his release from state incarceration on parole.

   **B.**   **Analysis of Culley's Habeas Claims**

     **1.**   **Ineffective Assistance of Counsel Claims**

       **a.**   **Preliminary Issues**

After reviewing Culley's ineffective assistance of counsel claims in his petition as well as reviewing the arguments in his reply brief, the Court has identified two preliminary issues it must address. The first issue relates to the standard applicable to Culley's claims. As explained above, for Culley to obtain habeas relief in this case, he must show that the state courts' decisions were (1) "contrary to" or involved an unreasonable application of clearly established case law, namely, Strickland; see id. § 2254(d)(1); or (2) were "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see id. § 2254(d)(2). Yet, at no point in Culley's submissions does he identify these standards or attempt to argue that he satisfies either standard. Culley, who never discusses the state courts' decisions on his claims in his submissions, does not argue or attempt to show that these decisions were "based upon an unreasonable determination of the facts in light of the evidence presented" in proceedings before the CCP, see id., and even if he included such an argument in his petition, he fails to rebut any factual findings by clear and convincing evidence. See id. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

20

pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  In addition, Culley does not argue or attempt to show that the state courts' decisions were "contrary to" Strickland, nor could he, considering that the state courts applied applicable state law consistent with Strickland.  See (Doc. No. 12-16 at 4 (setting forth law applicable to Culley's ineffective-assistance-of-counsel claims)); Culley II, 2022 WL 16832485, at *2–3 (same); see also Werts, 228 F.3d at 202–04 (holding that a Pennsylvania state court applying Pennsylvania's ineffective assistance of counsel standard did not contradict Strickland).

Instead, Culley poses his arguments in a manner suggesting that he believes that this Court conducts a de novo review of his claims.  This is evidenced by Culley's sole reference to Strickland in his submissions, which is included in his reply brief.  There, Culley correctly identifies the Strickland standard applicable to ineffective assistance claims, and he accurately indicates that ineffective assistance claims involve mixed questions of law and fact.  See (Doc. No. 15 at 10); see also Strickland, 466 U.S. at 698 (stating that both prongs of the standard applicable to ineffective assistance claims involve "mixed questions of law and fact").  However, he completely ignores the fact that the state courts rejected his ineffective assistance claims on their merits, which means that this Court will not conduct a de novo review of his claims by applying Strickland and instead must apply a high level of deference both to his trial counsel's actions and to the state court's determinations that counsel's actions were constitutionally adequate.  See Dunn, 594 U.S. at 739; Knowles, 556 U.S. at 123 (citing Yarborough, 540 U.S. at 5–6).  Moreover, Culley must go beyond a showing that the state courts' determinations were incorrect and show that they were unreasonable.  See Knowles, 556 U.S. at 123.

21

In the end, Culley fails to apply any of the applicable standards of review to his ineffectiveness claims. Nevertheless, because he does not argue that the state courts' determinations were contrary to Strickland or based on an unreasonable determination of the facts, this Court's review of his claims is limited to determining whether the state courts' determinations were reasonable. In other words, Culley may obtain habeas relief on his ineffectiveness claims only if he demonstrates that that the state courts' decisions involved an unreasonable application of Strickland.

The second issue presented by Culley's submissions is his attempt to assert new arguments in his reply brief. Culley's habeas petition presents three ineffectiveness claims: (1) trial counsel was ineffective for failing to call character witnesses who would have testified about Culley's reputation in the community for peacefulness and non-violence; (2) trial counsel was ineffective for failing to object to the prosecution providing certain evidence to the defense on the first day of and during the trial; and (3) trial counsel was ineffective for failing to file a motion to suppress the recorded telephone conversation between Culley and the victim. See (Doc. No. 1 at 5–10, 16–18). Yet, in his reply brief, Culley appears to assert that trial counsel was ineffective in other respects, including, inter alia: (1) "forcing [Culley] to admit his prior DUI and false information to law enforcement convictions" on direct examination, see (Doc. No. 15 at 11–12); (2) "pressuring [Culley] to take a plea instead of concentrating on effectively representing him," (id. at 12); (3) "misrepresent[ing]" the DNA evidence in his discussion with Culley about taking a plea for the purpose of pressuring Culley to take a plea, see (id.); (4) failing to file any pretrial motions or raise objections during the trial, see (id. at 21); (5) failing to "question[] the [victim] about her completely contradictory and exculpatory statements that she made to the Sane nurse[, Nurse Gray,] and police," see (id. at 22); (6) failing to question the

22

victim about her "blatant lies she got caught in on the stand during her testimony," see (id.); (7) failing to conduct "any kind" of investigation despite promising to conduct a "thorough investigation of facts[,] witnesses[,] and the police process and techniques," and having a "guy" who could "retrieve important deleted exculpatory information from [Culley]'s phone," see (id.); (8) having "very little contact with [Culley] to prep[are] for trial and review discovery for comment and investigation," see (id.); and (9) conducting a "poor cross[-]examination" of the victim, see (id. at 22–23). Culley further argues that the public defender assigned to represent him on direct appeal "would not contact [him] for any reason and no matter how many requests and messages were made," and then, when Culley finally saw his appellate brief, "it contained none of the issues [Culley] had complained of and was a mere 9 lines on a sheet of paper." See (id. at 23–24).

This Court will not consider any of these additional ineffectiveness claims that Culley raises for the first time in his reply brief. "A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief and is not ordinarily a forum to raise new claims. This principle applies in the habeas context, and provides grounds for disregarding the arguments thus raised." United States v. Nestor, Nos. 07-cr-00369, 10-cv-00556, 2010 WL 4879200, at *6 (W.D. Pa. Nov. 23, 2010) (internal citation omitted); see also Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (explaining that a moving party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief"); Judge v. United States, 119 F. Supp. 3d 270, 284 (D.N.J. 2015) (explaining general rule that a moving party may not raise new issues and present new factual materials in a reply brief "extends to the habeas context as '[b]asic fairness requires that an opposing party have a fair notice of his adversary's claims, as well as an

23

opportunity to address those claims'" (alteration in original) (quoting Soto v. United States, No. 04-cv-02108, 2005 WL 3078177, at *6 (D.N.J. Nov. 16, 2005))).

Moreover, even if the Court were to look past Culley's improper attempt to assert additional ineffectiveness claims via his reply brief, the Court would still not consider them here for several reasons. First, after the Clerk of Court docketed Culley's habeas petition, this Court issued an Administrative Order which, inter alia: (1) notified Culley about certain limitations on his right to file another habeas petition in the future if the Court considered his current petition; (2) informed Culley that he "should carefully consider whether [his] current habeas petition raises all grounds for relief from his conviction" and advised if that if it did not, he might want to withdraw it before the Court considers it; (3) provided Culley with the opportunity to withdraw his petition without prejudice to him, "after giving the petition more thought, to file an all-inclusive § 2254 petition, subject to statutory limitations"; and (4) directed Culley to complete and return a Notice of Election in which he indicated whether he wanted to "stand on [his] current petition or . . . withdraw [it] so [he could] file an all-inclusive petition." See (Doc. No. 3 at 1–3). Culley then timely returned a Notice of Election stating that he did not want to withdraw his petition and desired to "have the [C]ourt rule on [his] petition as filed." See (Doc. No. 4 at 1); see also R. 2(c), 28 U.S.C. foll. § 2254 (requiring habeas petition to "specify all the grounds for relief available to [them]" and to "state the facts supporting each ground" in their petition).

Second, Culley has not filed any motion seeking leave to amend his habeas petition or otherwise indicated that he seeks to amend his petition, which would have provided Respondents with the opportunity to address his request. Third, even if the Court considered Culley's reply brief as a motion seeking leave to amend or an amendment to his original petition, the Court

24

would deny most of the motion as futile or dismiss all but one of the additional habeas claims

because they are unexhausted and procedurally defaulted.[6]  Culley's raises only one additional

claim with the CCP as part of his PCRA proceedings, namely, his claim that trial counsel failed

to properly cross-examine the victim about her prior inconsistent statements.  See (Doc. Nos. 12-

12 at 3 (asserting in his original pro se PCRA petition that "trial [c]ounsel was ineffective by not

---

[6]  In general, habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  See 28 U.S.C. § 2242; R. 12, 28 U.S.C. foll. § 2254 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure applies in habeas proceedings with certain exceptions inapplicable here).  Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings and provides in pertinent part as follows:

> **(1) Amending as a Matter of Course.**  A party may amend its pleading once as a matter of course no later than:
>
> **(A)** 21 days after serving it, or
>
> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2) Other Amendments.**  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

See Fed. R. Civ. P. 15(a)(1)–(2); see also Miller v. Zaken, 21-cv-01230, 2024 WL 1621902, at *8 (M.D. Pa. Apr. 15, 2024) ("Amendment of habeas corpus petitions is governed by Federal Rule of Civil Procedure 15.").

Under the pre-2009 version of Rule 15(a), "once a responsive pleading has been filed, a prisoner may amend the petition 'only be leave of court or by written consent of the adverse party.'"  See Mayle v. Felix, 545 U.S. 644, 663 (2005) (quoting Fed. R. Civ. P. 15(a) (1993)).  Thus, the government's filing of an answer to a habeas petition terminated the petitioner's ability to amend their petition as a matter of right.  See id.  However, Rule 15(a)(1) was amended in 2009 to no longer terminate the right to amend by service of a responsive pleading.  See Fed. R. Civ. P. 15(a)(1) advisory committee's note to 2009 amendment ("[T]he right to amend once as a matter of course is no longer terminated by service of a responsive pleading.").  As such, a habeas petitioner arguably has 21 days after the filing of a respondent's answer to amend their habeas petition as a matter of course under Rule 15(a)(1).

adequately questioning [the victim] regarding statements she made at the time of trial, thereby

violating [Culley]'s Confrontation Clause [r]ights"); 12-14 at 5 (asserting in his counseled

amended PCRA petition that "[t]rial counsel failed to adequately question [the victim] regarding

[her] trial testimony that was inconsistent with prior statements and testimony and with the

statements of other witnesses, including relevant witness interviews and/or written statements by

her and [S.S.]"); 12-16 at 9 (denying Culley's claim that trial counsel was ineffective due to his

"inadequate cross-examination of the victim and [S.S.]")); Culley II, 2022 WL 16832485, at *6

(addressing Culley's claim on appeal that the CCP erred by not concluding that his trial counsel

was "ineffective for failing to adequately question the victim regarding inconsistent statements,

including those that she made at the time of the trial").  Culley neither alleges that he fully

exhausted his other claims nor argues that his procedural default should be excused.[7]

Fourth, and finally, even if the Court considered Culley to have amended his petition to

include a claim that his trial counsel was ineffective for failing to adequately cross-examine the

victim about alleged inconsistent statements, including those that she made at the time of trial,

the Court would deny this claim because he fails to show that the state courts' determinations on

this claim were unreasonable.[8]  The CCP determined that this claim did not entitle Culley to

habeas relief, stating as follows:

> [Trial counsel] is further charged with inadequate cross-examination of the victim
> and [S.S.], the Commonwealth's only other direct witness, concerning

---

[7] Assuming arguendo that these new claims were exhausted and not procedurally defaulted, Culley cites no facts in support of his unexhausted claims and many of his claims are belied by the record.  Compare (Doc. No. 15 at 21 (claiming that trial counsel never posed any objections during the trial)), with (Doc. No. 12-24 at 106 (trial counsel raising a hearsay objection)).

[8] There does not appear to be a timeliness issue with such an amendment insofar as any such amendment would have occurred, after applying statutory tolling, within one year after Culley's judgment of sentence became final.  See 28 U.S.C. § 2244(d)(1) (setting forth limitations period for Section 2254 habeas petitions).

inconsistencies in their trial testimony, their oral and written police statements, the victim's statements to Nurse Gray, and certain text messages. However, the record indicates that counsel made extensive and compelling use of these materials; demonstrating inter alia (1) that [S.S.], contradicting the victim's testimony, did not recall hearing the victim screaming or crying out for help;[9] (2) that [S.S.], as she was departing the scene, recalled speaking to [Culley], contra the victim's claim that [Culley] had already exited the basement apartment;[10] (3) that the victim responded to Nurse Gray immediately following the incident that [Culley] had performed cunnilingus, contra her testimony on direct examination that "there was honestly no . . . play beforehand, it was just strictly sex;[11] (4) that the victim's testimony that she and [Culley] had made plans to smoke marijuana, but not drink, contradicted her police statement, which referenced only drinking;[12] and (5) that the victim's testimony that the group's plans for smoking marijuana never came to fruition was contradicted by [S.S.]'s police statement and was, as the victim admitted on cross-examination, untrue.[13]    On this record, and absent a specific proffer as to which inconsistencies went unexamined and to what prejudicial effect, we must conclude that [Culley]'s claim lacks arguable merit. Our experience is that when a cross-examination is successful on a few matters, it is successful indeed.

See (Doc. No. 12-16 at 9–10 (footnotes in original)).

As for the Superior Court, it affirmed the CCP's determination that Culley's claim was

meritless, explaining as follows:

Culley next argues trial counsel was ineffective for failing to adequately question the victim regarding inconsistent statements, including those that she made at the time of the trial. Culley's Br. at 5.

Although this issue is listed as the fourth issue in Culley's statement of the questions involved, the argument section of Culley's brief does not contain a separate section on this issue, in violation of Pennsylvania Rule of Appellate

---

[9]  N.T. Trial, at 36:6–14 (victim); 123:4–124:6 ([S.S.]).

[10]  Id., at 37:11–21, 79:17–25 (victim), 124:7–125:11 ([S.S.]).

[11]  Id., at 36:2–5 (victim), 151:2–152:4 (Nurse Gray).

[12]  Id., at 27:24–28:5, 47:6–50:25; Commonwealth's Exhibit 4.

[13]  Id., at 27:24–28:1, 57:19–61:9; Commonwealth's Exhibit 5.

27

Procedure 2119(a).[14]  Instead, Culley has combined this issue with the discussion of the Brady claim in a single section titled "Brady [V]iolation Inconsistent Statements."  See Culley's Br. at 36–38.  However, because Culley's failure to comply with Rule 2119(a) does not impede our review, we decline to find waiver. But see In re R.D., 44 A.3d 657, 674 (Pa. Super. 2012) (finding waiver where Rule 2119(a) violation impeded "meaningful appellate review").

Culley generally argues that trial counsel should have cross-examined the victim about her prior inconsistent statements.  However, Culley fails to specify what those inconsistent statements were, only stating that the "police reports and the transcript of the preliminary hearing bear out these inconsistencies[.]"  Culley's Br. at 37–38. Moreover, the record indicates that trial counsel thoroughly cross-examined the victim at trial about numerous inconsistences.  See N.T. Trial, at 46–50, 61–62, 74– 75, 92–94.  Counsel reiterated at the PCRA hearing that he brought out inconsistencies between the victim's testimony at trial and her statements to police. N.T. PCRA Hearing, at 37–38.  Thus, we find no error in the [CCP]'s determination that this claim lacks arguable merit.  See [CCP] Op. at 8.

See Culley II, 2022 WL 16832485, at *6 (footnote in original).

Culley fails to show that the state courts' determinations were unreasonable.  The state court record supports their conclusion that Culley failed to identify the victim's supposed inconsistent statements and identify which portions of the other evidence contradicted those statements in his written submissions.  See (Doc. Nos. 12-12 at 3; 12-14 at 9; 12-19 at 16). Additionally, during his testimony at the PCRA hearing, Culley vaguely described the victim's alleged inconsistent statements as follows:

The statements leading up to trial were statements that she made in the rape kit as far as foreplay and other consensual acts, and then the testimony -- well, I guess her reports to the police officer and then her ongoing testimony at trial, whether it's a lot of conflicts between the two of them.

---

[14]  See Pa. R.A.P. 2119(a) (stating that in an appellate brief, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part -- in distinctive type or in type distinctively displayed -- the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent").

28

<u>See</u> (Doc. No. 12-27 at 10).  This information is insufficient to specifically identify

inconsistencies between the victim's trial testimony and any of her prior statements.[15]

Furthermore, the state courts reasonably determined that trial counsel thoroughly cross-

examined the victim, <u>see</u> (Doc. No. 12-24 at 45–77, 80–86, 93–94), or brought out

inconsistencies in her testimony through his cross-examination of other witnesses.  <u>Compare</u> (<u>id.</u>

at 37 (victim testifying on direct that she and Culley's sexual interactions involved "just strictly

sex")), <u>with</u> (<u>id.</u> at 152 (Nurse Gray testifying on cross-examination that her notes from victim's

visit at hospital for rape kit state that victim told her that Culley performed oral sex on her)).

Trial counsel also testified at the PCRA hearing that he "planned" his cross-examination of the

victim, "cross-referenced the paperwork from . . . not only the rape kit, but also the report that

was attached, the DNA report," and "believe[d he] . . . cross-examine[d the victim] effectively."

<u>See</u> (Doc. No. 12-27 at 39).  Accordingly, even if the Court permitted Culley to amend his

petition to include this specific ineffectiveness claim, the Court would deny the claim because he

fails to satisfy his burden to show that the state courts' determinations were unreasonable.[16]

---

[15]  In Culley's reply brief, he complains that trial counsel was ineffective because he did not
cross-examine the victim about information contained (presumably) in S.S.'s statement to police,
which he believes was "similar" to his version of events.  <u>See</u> (Doc. No. 15 at 23).  Putting aside
the fact that Culley fails to identify (and this Court could not locate) any Pennsylvania Rule of
Evidence trial counsel could invoke to impeach the victim by using not her own, but S.S.'s
interview or statement to police, he does not provide a copy of the statement he references, so the
Court has no way to determine whether his representations about the contents of the statement
are accurate.

[16]  Assuming <u>arguendo</u> that Culley was able to show that the state courts' determinations about
counsel's performance were unreasonable, and the Court reviewed whether Culley also
demonstrated prejudice due to counsel's performance under <u>Strickland</u>, the Court would still
deny this claim because Culley has not made a sufficient showing that the outcome of his trial
would have been different.

### b.      Trial Counsel's Decision Not to Call Character Witnesses

Culley asserts that his trial counsel was ineffective because counsel failed to call character witnesses at trial who would testify about Culley's reputation for peacefulness/non-violence.  See (Doc. No. 1 at 16).[17]  The CCP rejected this claim, explaining in pertinent part as follows:

> The general standard for evaluating a claim of ineffective assistance is well settled and applicable to each of [Culley's] arguments.  Counsel is presumed effective, and [Culley] bears the burden of demonstrating that any legal strategy forgone was of arguable merit, that counsel lacked a reasonable basis for declining to pursue the strategy, and that, but for the errant decision, an outcome more favorable to [Culley] is reasonably likely to have been obtained.[18]  The presentation of character evidence, which is not "mere make-weight," and which "may, in and of itself, create a reasonable doubt of guilt," is a strategy of arguable merit.[19]  This is doubly so where, as here, the case turns in large part on the relative credibility of victim and accused.[20]  It is further evident that [trial counsel], having discussed the possibility of presenting character witnesses with [Culley] and his father, either knew or should have known of the seven individuals who, it is stipulated by the parties, were available to testify as to [Culley]'s reputation for . . . non-violence.[21]  Nevertheless, we find counsel's decision not to call these witnesses reasonable under the circumstances.

---

[17]  As described supra, Culley also claimed that trial counsel was ineffective for failing to present character witnesses to testify about his reputation in the community for honesty.  Culley does not include this claim in his habeas petition, see (Doc. No. 1 at 16 ("At [the] PCRA [e]videntiary hearing, trial counsel admitted that he was aware that [Culley] wanted to call character witnesses to vouch for the pertinent trait of [Culley] being non-violent"); see also (Doc. No. 15 (indicating that his character witnesses would have testified to his reputation in the community for "non-violence and peacefulness"); as such, the Court will not address it here.

[18]  Commonwealth v. Weiss, 606 A.2d 439, 441–42 (Pa. 1992).

[19]  Id. at 442.

[20]  Id.

[21]  Proceedings of Hearing of October 4, 2021 (hereinafter "N.T. Hearing"), at 28:14-23 (defense counsel), 7:11-22 ([Culley]), 21:21-22:16 (father), 26:3-11 (stipulation).  See Commonwealth v. Treiber, 121 A.3d 435, 498 (Pa. 2015) (counsel is not ineffective for failing to call witnesses unless witnesses were available and known, or should have been known, to counsel).

. . . Turning to [Culley]'s reputation for non-violence, [trial counsel] declined to broach that subject for fear of opening the door to evidence of [Culley]'s criminal record and his preference for "rougher [consensual] sex."[22]  As to the former, we note that two of [Culley]'s convictions, False Report[23] and False Identification,[24] were already admissible – not in rebuttal of character evidence, but as crimen falsi per Pa.R.E. 609(a) – and so, in this respect, counsel's concern was unfounded.  As to the latter, it is not clear that testimony concerning [Culley]'s sexual proclivities could have been admitted,[25] nor, in the alternative, that [Culley] would have been meaningfully prejudiced by its admission.[26]

However, [Culley]'s several non-crimen-falsi convictions, especially the two of Possession with Intent to Deliver ("PWID")[27] and three of Driving [U]nder the [I]nfluence ("DUI"),[28] would have been rendered admissible by the adoption of the strategy forgone.  Where the Commonwealth cross-examines a character witness regarding [their] knowledge of particular acts of misconduct by the defendant to test the accuracy of [their] testimony and the standard by which [they] measure[] reputation[,]" Commonwealth v. Peterkin, 513 A.2d 373, 382–[83] (Pa. 1986), the inquiry is not limited to acts relevant to the character trait vouched for on direct examination.  Commonwealth v. Jones, 636 A.2d 1184 (Pa. Super. 1984) (witnesses to defendant's reputation for non-violence subject to cross-examination as to defendant's involvement in drug trade).

---

[22]  N.T. Hearing, at 39:10.

[23]  18 Pa. C.S. § 4906(a), Docket No. CP-21-CR-0000142-2010.

[24]  18 Pa. C.S. § 4914(a), Docket No. CP-21-CR-0001223-2012.

[25]  This appears to be an issue of first impression in the Commonwealth.  See, however, [sic] State v. Gaspar, 982 A.2d 140, 149 (R.I. 2009) (evidence of defendant's penchant for "rough or aggressive [consensual] sexual activity" inadmissible in sexual assault case as "very likely to confuse the jury and invite an emotional response").

[26]  Despite its potential for prejudice, this evidence could have served to demonstrate that superficially violent aspects of [Culley]'s encounter with the victim were not, in fact, indicative of compulsion or non-consent.  [Trial counsel] appears to have considered such a strategy.  N.T. Hearing, at 39:5-40:3.

[27]  35 P.S. § 780-113(a)(30), Docket Nos. CP-21-CR-0001646-2017 and CP-21-CR-0000973-2010.

[28]  75 Pa. C.S. § 3802(B), (D)(3); Docket Nos. CP-21-CR-0002969-2009, CP-21-CR-0000142-2010, and CP-21-CR-0000592-2010.  [Culley] admitted to one conviction of DUI on direct examination.  Proceedings of Trial of October 31, 2017 to November 2, 2017 (hereinafter "N.T. Trial"), at 295:10.

> While [Culley]'s past crimes were non-violent and, indeed, "relatively minor" in comparison to those with which he was charged in the case sub judice, we must disagree that such evidence necessarily "would have had little if any impact on a fact-finder."[29] PWID is a felony offense, itself tending to evoke animus; while the DUIs may have spoken to [Culley]'s drinking habits, thus corroborating the victim's narrative in terms of the role that she assigned to alcohol in the events of that evening.[30] The weighing of such risks is a subtle business, one lying within the realm of reasonable professional judgment, which we find was exercised here by [trial counsel].

See (Doc. No. 12-16 at 4–6 (footnotes and ninth alteration in original).

The Superior Court concluded that the CCP "did not err" in determining that Culley's ineffectiveness claim lacked merit. See Culley II, 2022 WL 16832485, at *3. In reaching this conclusion, the Superior Court explained:

> A criminal defendant may offer evidence of a pertinent character trait as substantive evidence that the defendant did not commit a charged crime. See Pa.R.E. 404(a)(2)(A). "Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case," and "is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence." Commonwealth v. Goodmond, 190 A.3d 1197, 1201 (Pa. Super. 2018) (citation omitted). However, "[t]he failure to call character witnesses does not constitute per se ineffectiveness." [Treiber, 121 A.3d at 498]. Rather, to succeed on such a claim, a petitioner must establish the following:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.
>
> Goodmond, 190 A.3d at 1202 (citation omitted).
>
> The decision whether to call a certain witness usually involves a matter of trial strategy. See Commonwealth v. Jones, 652 A.2d 386, 389 (Pa. Super. 1995). The failure to present character witnesses may be excused if counsel "had a reasonable basis for failing to present character witnesses at appellant's trial." [Weiss, 606 A.2d at 442]. If a defendant raises the issue of his good character, evidence of prior,

---

[29] Amended Petition, at 15.

[30] E.G. [sic] "I felt like it was the alcohol that made him do what he did." N.T. Trial, at 40:1-11.

32

non-crimen falsi convictions may be admissible. Commonwealth v. Murphy, 182 A.3d 1002, 1008 (Pa. Super. 2018).

Here, trial counsel admitted in his testimony at the PCRA hearing that Culley wished to present character witnesses. However, counsel stated Culley never gave him a list of the witnesses' names, except for his aunts' names, despite counsel's request. N.T. PCRA Hearing, 8/16/21, at 41–42. Counsel also testified he explained to Culley he was concerned that the testimony of any potential character witness as to Culley's reputation for law-abidingness would allow Culley's prior criminal convictions to be admissible on cross-examination, in addition to his history of alcohol use. Id. at 40–41. Counsel stated he ultimately decided it was in Culley's best interest not to call character witnesses. Id. at 41.

The PCRA court found counsel's decision reasonable. PCRA Court Opinion, filed 12/17/21, at 2. The court opined that Culley's non-crimen falsi convictions, especially two convictions for possession with intent to deliver and three convictions for driving under the influence("DUI"), would have been rendered admissible by the presentation of character testimony. Id. at 4. It noted the admission of Culley's DUI's, in particular, would have corroborated "the victim's narrative in terms of the role that she assigned to alcohol in the events of that evening." Id. Accordingly, the court concluded that counsel acted in the realm of reasonable professional judgment in deciding to not call character witnesses. Id.

The PCRA court did not err. Trial counsel's decision not to call character witnesses was a reasonable trial strategy. See Commonwealth v. Van Horn, 797 A.2d 983, 988 (Pa. Super. 2002) (concluding that trial counsel had a reasonable trial strategy for not calling character witnesses because he believed they would be questioned about appellant's prior convictions, and thus, was not ineffective); see also Commonwealth v. Morales, 701 A.2d 516, 526 (Pa. 1997) (concluding "[t]rial counsel cannot be deemed ineffective for failing to present character witnesses who could have been cross-examined about appellant's prior bad acts."). Since the record supports the PCRA court's determination that trial counsel had a reasonable basis for not calling character witnesses, Culley's first issue is without merit.

See id. at *3–4.

Here, Culley falls short in satisfying his burden to show that this Court should grant him habeas relief on his first ineffectiveness claim. Understandably, in attempting to satisfy his burden, Culley focuses on trial counsel's admission during the PCRA evidentiary hearing that he knew Culley wanted to call character witnesses to testify about his reputation in the community for peacefulness/non-violence, as well as the stipulation entered into between him and the

33

Commonwealth in which they stipulated that seven witnesses were available and willing to testify as to his character for peacefulness/non-violence at his trial. See (Doc. No. 1 at 16). He also argues that trial counsel's concern regarding opening the door to the introduction of Culley's prior crimes if they presented character witnesses was unfounded because (1) trial counsel brought up his prior convictions while questioning Culley during trial and (2) his prior convictions were inadmissible under the Pennsylvania Rules of Evidence. See (id.).

Culley's arguments pertaining to trial counsel's knowledge of his desire to present character witnesses or their willingness and availability to testify at trial are of no moment because the state courts agreed with Culley that his trial counsel knew that Culley wanted to present character witnesses at trial. See (Doc. No. 12-16 at 4 (pointing out that trial counsel "discussed the possibility of presenting character witnesses with [Culley] and his father")); Culley II, 2022 WL 16832485, at *3 ("[T]rial counsel admitted in his testimony at the PCRA hearing that Culley wished to present character witnesses."). The state courts also agreed that counsel should have known, or did know, all or some of the potential character witnesses. See (Doc. No. 12-16 at 4 (determining that trial counsel "either knew or should have known of the seven individuals who, [as] stipulated by the parties, were available to testify as to [Culley]'s reputation for . . . non-violence")); see also Culley II, 2022 WL 16832485, at *3 ("[Trial c]ounsel stated Culley never gave him a list of the witnesses' names, except for his aunts' names, despite counsel's request." (citation omitted)). Thus, Culley fails to show that the state courts' decisions were unreasonable insofar as they agreed with these arguments.

Regarding Culley's other argument about the reasonableness of trial counsel's decision not to call character witnesses, which primarily relates to Pennsylvania Rule of Evidence 405(a)(1), it does not entitle him to habeas relief. Despite this conclusion, there is a portion of

Culley's argument that is persuasive.  Namely, it appears that the state courts incorrectly determined that Culley's introduction of character evidence in the nature of his reputation for peacefulness/non-violence in the community would have opened the door for the prosecution to cross-examine Culley's character witnesses about his non-<u>crimen</u> <u>falsi</u> convictions for driving under the influence ("DUI").  <u>See</u> (Doc. No. 12-16 at 6); <u>Culley II</u>, 2022 WL 16832485, at *4.

As for the CCP, it cited to two cases, <u>Commonwealth v. Peterkin</u>, 513 A.2d 373, 382–83 (Pa. 1986) and <u>Commonwealth v. Jones</u>, 636 A.2d 1184 (Pa. Super. Ct. 1994), for the proposition that the prosecution could have cross-examined Culley's character witnesses about his DUI convictions.  Both of those decisions appear to have been decided prior to Pennsylvania's adoption of Pennsylvania Rule of Evidence 405, which was adopted in 1998 and specifically states that "[o]n cross-examination of the character witnesses, the court may allow an inquiry into relevant instances of the person's conduct <u>probative of the character trait in question</u>."  Pa. R. Evid. 405(a)(1) (emphasis added).[31]  It appears highly doubtful that convictions for DUIs are probative of a person's character for peacefulness/non-violence.  <u>See, e.g.</u>, <u>Commonwealth v. Stemler</u>, No. 1895 MDA 2012, 2013 WL 11253829, at *9 (Pa. Super. Ct. Sept. 17, 2013) (unpublished) ("Evidence of Appellant's DUI convictions would not have been admissible to rebut evidence that Appellant had a reputation as a non-violent person because they do not pertain to the relevant character trait of non-violence.").

The Superior Court appears to have made a similar incorrect determination.  It also cited to two cases, <u>Commonwealth v. Van Horn</u>, 797 A.2d 983, 988 (Pa. Super. Ct. 2002) and <u>Commonwealth v. Morales</u>, 701 A.2d 516, 526 (Pa. 1997), in support of its determination that

---

[31]  It is unclear whether any provisions in Rule 405 were included in a different Rule or statute prior to 1998.

"[t]rial counsel's decision not to call character witnesses was a reasonable trial strategy." See Culley, 2022 WL 16832485, at *4. However, neither of those cases was relevant to Culley's case because trial counsel in the cited cases were concerned with the defendants' prior convictions for offenses pertinent to the character trait of non-violence. See Van Horn, 797 A.2d at 988 (concluding that trial counsel had a reasonable basis for not calling character witnesses "because he believed that they would be cross-examined concerning Appellant's prior convictions for burglary and statutory rape"); Morales, 701 A.2d at 526 & n.24 (determining that trial counsel was not ineffective for failing to call character witnesses because those witnesses "could have been cross-examined about appellant's prior bad act" and "appellant had a lengthy record of criminality and a reputation for violence").

Although it appears that the state courts incorrectly determined that trial counsel had a reasonable basis for not calling character witnesses insofar as it would have opened the door to the prosecution cross-examining those witnesses about Culley's three DUI convictions, the state courts' ultimate decisions to not find that counsel acted unreasonably are still reasonable for two reasons. See Knowles, 556 U.S. at 123 (explaining that when the state court has decided an ineffective assistance of counsel claim on the merits, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." (citation and internal quotation marks omitted)). First, unlike Culley's three DUI convictions, it appears that his two PWID convictions would have been admissible for the prosecution to use when cross-examining Culley's character witnesses about his reputation for nonviolence. Under Pennsylvania law, "a character witness may be cross-examined regarding [their] knowledge of particular acts of misconduct by the defendant to test the accuracy of [their] testimony and the

36

standard by which [they] measure[] reputation." See Commonwealth v. Kouma, 53 A.3d 760,

769 (Pa. Super. Ct. 2012) (citation omitted); see also Commonwealth v. Fletcher, 861 A.2d 898,

916 (Pa. 2004) ("By presenting reputation evidence as to his character for peacefulness and non-

violence, Appellant 'opened the door' for the Commonwealth to cross-examine his character

witness regarding specific instances of conduct probative of the character trait in question.  As a

result, the Commonwealth was entitled to cross-examine [the witness] concerning her degree of

knowledge of Appellant's character." (citations omitted)).  Following this principle, the Superior

Court has concluded that a prosecutor may cross-examine a defendant's character witnesses

about whether they "deemed a drug dealer to be a peaceful person" because such cross-

examination related to "the witnesses' standard by which they measure[d] peacefulness."  See

Commonwealth v. Rashid, 160 A.3d 838, 848–49 (Pa. Super. Ct. 2017).  The Superior Court has

also determined that:

> [c]onvictions for drug dealing . . . are relevant to a consideration of whether a
> defendant has a reputation for being peaceful and nonviolent.  See [Rashid, 160
> A.3d at 848–49].  Thus, where a defendant presents reputation evidence from a
> character witness, [they] "open[] the door" for the Commonwealth to cross-
> examine the character witness regarding the defendant's drug trafficking . . .
> convictions.  See Commonwealth v. Fletcher, 580 Pa. 403, 861 A.2d 898, 916
> (2004) ("[W]here the defense presents evidence of the defendant's reputation for
> peacefulness, the prosecution is permitted to test that testimony by inquiry into
> whether the witness is aware of convictions which tend to refute that reputation.")
> (quotation and quotation marks omitted)).

See Commonwealth v. Regan, No. 287 EDA 2017, 2018 WL 2307383, at *6 (Pa. Super. Ct. May

22, 2018).  Thus, the state courts reasonably determined that trial counsel's decision not to call

character witnesses was reasonable insofar as it would have opened the door to the prosecution

cross-examining those witnesses about Culley's felony drug dealing convictions.  See

Commonwealth v. Hull, 982 A.2d 1020, 1023 (Pa. Super. Ct. 2009) ("Counsel has a reasonable,

strategic basis for not calling character witnesses if [they] ha[ve] a legitimate reason to believe

37

that the Commonwealth would cross-examine the witnesses concerning bad-character evidence."

(citing Van Horn, 797 A.2d at 988)).

Second, the state courts reasonably determined that Culley's introduction of character

witnesses would have rendered his DUI and PWID convictions admissible, even if the DUI

convictions could not be used to cross-examine those witnesses. As the Superior Court pointed

out, "[i]f a defendant raises the issue of [their] good character, evidence of prior, non-crimen

falsi convictions may be admissible." See Culley II, 2022 WL 16832485, at *3 (citing

Commonwealth v. Murphy, 182 A.3d 1002, 1008 (Pa. Super. Ct. 2008)). In particular,

Pennsylvania law provides that:

> No person charged with any crime and called as a witness in his own behalf, shall
> be asked, or if asked, shall be required to answer, any question tending to show that
> he has committed, or been charged with, or been convicted of any offense other
> than the one wherewith he shall then be charged, or tending to show that he has
> been of bad character or reputation unless:
>
> (1) he shall have at such trial, personally or by counsel, asked questions of the
> witness for the prosecution with a view to establish his own good reputation or
> character, or has given evidence tending to prove his own good character or
> reputation . . . .

See 42 Pa. C.S. § 5918(1).

Under Section 5918(1), if trial counsel called character witnesses on Culley's behalf, he

would have opened the door to the prosecution cross-examining Culley about his other two DUI

convictions and his two PWID convictions.[32] As the CCP noted, "PWID is a felony offense,

---

[32] During trial, trial counsel asked Culley about at least one of those DUI convictions to explain
why Culley (who was 27 years old at the time of trial) had his mother pick him up from work on
the day he raped the victim. See (Doc. No. 12-24 at 295 ("Q[.] And we just heard your mom
testify about the night of the incident, her coming to pick you up. That was common practice,
correct? A[.] Yes. Q[.] And someone would drop you off? A[.] Yes. Q[.] And why was that,
Joshua? A[.] I do not drive, sir. Q[.] And why don't you drive? A[.] I have lost my license for a
DUI.")).

38

itself tending to evoke animus; while the DUIs may have spoken to [Culley']s drinking habits, thus corroborating the victim's narrative in terms of the role that she assigned to alcohol in the events of that evening." See (Doc. No. 12-16 at 6).  The Superior Court agreed with the CCP's assessment of this evidence. See Culley II, 2022 WL 16832485, at *4 (determining that the CCP "did not err" in concluding that, inter alia, "Culley's non-crimen falsi convictions, especially two convictions for [PWID] and three convictions for [DUI], would have been rendered admissible by the presentation of character testimony" (citation omitted)).  Culley fails to show that these determinations were unreasonable.

Overall, even if part of the state courts' determinations relating to Culley's claim that his trial counsel was ineffective for failing to call character witnesses to testify about Culley's reputation in the community for peacefulness and non-violence were incorrect, Culley fails to satisfy his heightened burden to show that their determinations were unreasonable.  He also fails to show that "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision" than his trial counsel did in this case.  See Dunn, 594 U.S. at 739–40 (quoting Harrington, 562 U.S. at 101).

Moreover, assuming arguendo that Culley demonstrated that the state courts unreasonably determined that trial counsel employed a reasonable trial strategy when deciding not to present character witnesses, he would satisfy only the first part of the Strickland analysis. In other words, he has not specifically argued that he was prejudiced by trial counsel's alleged failure or explained in detail how he was prejudiced by this alleged failure.

The state courts never addressed whether Culley was prejudiced by trial counsel's conduct because they concluded that trial counsel had a reasonable basis for not calling character witnesses at step one of the two-step Strickland analysis.  See (Doc. No. 12-16 at 4–6); Culley II,

2022 WL 16832485, at *3–4.  Nevertheless, even under de novo review, Culley fails to show he was prejudiced by trial counsel's decision not to call character witnesses.

The Court recognizes that character evidence can, in itself, create a reasonable doubt in certain cases.  See United States v. Rice, No. 14-cr-00119, 2023 WL 4138256, at *10 (M.D. Pa. June 22, 2023) ("[G]ood character evidence 'may be enough to raise a reasonable doubt of guilt' in some circumstances." (citing Michelson v. United States, 335 U.S. 469, 476 (1948) and United States v. Logan, 717 F.2d 84, 88 (3d Cir. 1983))); Weiss, 606 A.2d at 442 ("Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt and, thus, require a verdict of not guilty." (citing Commonwealth v. Neely, 561 A.2d 1 (Pa. 1989))).  However, this is not one of those cases because it was not simply a case involving conflicting testimony between a defendant and a victim insofar as the prosecutor also played the recording of Culley's statements during his conversation with the victim and two police detectives, which trial counsel acknowledged was "very damning."  See (Doc. No. 12-16 at 31).  Furthermore, it is unclear how believable Culley's witnesses would have been or how they would have held up under cross-examination because they never testified during Culley's PCRA hearing due to the parties stipulating that the seven character witnesses would have testified about Culley's reputation in the community for "peacefulness and honesty."  See (id. at 26).  And the Court must point out again that if these character witnesses testified at trial, the prosecution could have cross-examined them regarding at least Culley's PWID convictions, and the prosecution could have cross-examined Culley about those same convictions during his trial testimony.  Accordingly, even if the Court found that the state courts' determination that trial counsel employed a reasonable trial strategy by not calling character witnesses was in fact unreasonable, Culley has either waived any argument that he suffered prejudice by failing to

articulate it in his petition or reply brief, or failed to demonstrate that there is reasonable

probability that if counsel called character witnesses to testify about his reputation for

peacefulness/non-violence, the result of his trial would have been different.

> ### c.   Trial Counsel's Alleged Failure to Challenge the Prosecution's Provision of Late Discovery and Possible <u>Brady</u> Violation

For his second ineffectiveness claim, Culley asserts that his trial counsel was ineffective

for failing to act after the prosecution did not produce (1) certain text messages, other reports,

and written statements from the victim until the first day of trial and (2) an audio/video-recorded

interview of S.S. until the second day of trial.  <u>See</u> (Doc. No. 1 at 17).  Culley asserts that trial

counsel failed to recall either the victim or S.S. or move for a mistrial after receiving this late-

disclosed evidence.  <u>See</u> (<u>id.</u>).

The CCP rejected Culley's claim, stating as follows:

> [Culley] claims . . . that the Commonwealth violated its obligations under [<u>Brady</u>] by supplying the defense with certain text messages and a transcription of [S.S.]'s police interview only on the day of trial.[33]  It is undisputed that the Commonwealth delayed in producing certain items, which, if not duplicative of already available evidence, may well have been favorable to [Culley] insofar as they served to undermine his accuser's credibility.  <u>Commonwealth v. Haskins</u>, 60 A.3d 538, 547 (Pa. Super. 2012) (<u>Brady</u> applicable to withholding of impeachment evidence). However, counsel's thorough cross-examination of the victim and her cousin, discussed in detail <u>supra</u>, belies any – again unspecified – claim of prejudice. Despite [Culley]'s incredulity that counsel was "somehow able to review this new material before he cross-examined [the Commonwealth's witnesses],[34] the record

---

[33]  The record is somewhat opaque, but it appears that the "new material" consisted of text messages in paper form that counsel had already obtained in electronic form, and a transcription of [S.S.]'s police interview, the recording of which counsel had already viewed.  N.T. Hearing at 33:13–25.  Elsewhere, however, [trial counsel] indicated that he received a recording (not a transcription) of [S.S.]'s interview.  <u>Id.</u> at 35:11–19.  Finally, in his proffer, [Culley] refers only vaguely to "witness interviews and/or written statements by [the] victim and [S.S.]."  Amended Petition, at 2.

[34]  <u>Id.</u> at 17.

suggests that [trial counsel], an experienced member of our bar,[35] who already possessed much if not all of the relevant evidence,[36] did precisely that.

See (Doc. No. 12-16 at 10–11 (all alterations except third to last alteration in original; footnotes in original).

As for the Superior Court, it agreed with the CCP that Culley's claim was meritless, explaining as follows:

Culley next argues trial counsel was ineffective for failing to object to a possible Brady[37] violation, including a witness statement by S.S., the victim's cousin who was present on the night of the incident, that the prosecution turned over to defense counsel in the middle of the trial. Culley's Br. at 14. Culley contends that because the Commonwealth failed to timely produce this evidence, defense counsel was unable to adequately prepare and cross-examine S.S. about numerous inconsistencies in her statements. Id. at 14, 34.

During the trial, the Commonwealth conceded it had inadvertently failed to turn over to defense counsel a disk of a 46-minute police interview of S.S.:

[The Commonwealth]: Your Honor, at this point it appears that the Commonwealth from the police department was provided two copies of one interview mistakenly and not provided the audio recording and audio and video recording of the interview with [S.S.] I did not have it prior to this very moment, which means defense counsel doesn't have it.

N.T. Trial, 10/31/17, at 165–66; see also Commonwealth's Br. at 19–20, 23.[38]

The Commonwealth thereafter provided defense counsel with the disk. N.T. Trial, at 168. Counsel asked to review the disk overnight and resume cross-examination of the detective the next morning, and the court agreed. Id. at 168, 172–73. Counsel indicated the next day at trial that he reviewed the interview[,] and he did not intend

---

[35] N.T. Hearing, at 27:8–25.

[36] See footnote [20] supra.

[37] Brady v. Maryland, 373 U.S. 83 (1963).

[38] Trial counsel testified that he already knew about other statements and text messages that he received from the Commonwealth prior to trial. It was only S.S.'s police interview that was considered new material. N.T. PCRA Hearing, at 33–34.

42

to recall S.S. for any additional cross-examination. Id. at 176. Counsel testified at the PCRA hearing that he had had adequate time to review S.S.'s police interview and that he was able to effectively cross-examine her at trial. N.T. PCRA Hearing, at 33–34.

The [CCP] found that while the Commonwealth delayed in producing certain evidence, defense counsel's thorough cross-examination of S.S. belied any claim of prejudice. [CCP] Op. at 8. The [CCP] noted counsel already possessed most of the relevant evidence prior to trial and was able to adequately review S.S.'s late-produced interview. Id. 8–9.

No relief is due on this claim. Despite Culley's claim that having S.S.'s interview prior to trial "would have aided counsel in cross-examination regarding numerous inconsistences[,]"[39] Culley fails to identify any specific inconsistent statement or evidence that the interview revealed. Moreover, the record demonstrates that counsel extensively cross-examined S.S. on numerous inconsistencies. They included whether she was "black out drunk" or just sick from drinking alcohol, whether she smoked a marijuana "blunt" rather than a "bowl," whether Culley brought her food while she was sick in the bathroom, and her general recollection of the night in question. See N.T. Trial, at 112–[]25. Thus, counsel had a reasonable basis not to object to a purported Brady violation when he had an adequate opportunity to review the evidence and made a strategic decision not to recall S.S.

See Culley II, 2022 WL 16832485, at *4–5 (some alterations in original; footnotes in original).

Here, Culley fails to satisfy his burden to show that the state courts' decisions involved an unreasonable application of Strickland. Culley asserts that the prosecutor waited until the first day of trial to disclose to the defense "text messages and other reports from the victim as well as written statements from the victim" and then turned over S.S.'s audio/video recorded interview on the second day of trial after the victim and S.S. had already testified. See (Doc. Nos. 1 at 17; 15 at 13, 14). Culley believes that this information was "very useful" and "critical" impeachment evidence and "contained crucial statements that directly contradicted and conflicted with the [victim's testimony], and other testimony"; yet, trial counsel chose to not recall either the victim or S.S. to testify and did not move for a mistrial. See (Doc. Nos. 1 at 17;

---

[39] See Culley's Br. at 34.

43

15 at 13, 14).[40]  Culley also asserts that during the PCRA evidentiary hearing, trial counsel testified that, inter alia, he "should have done some thing [sic] different but is not super human" and "when he spoke to jury members[,] that was something that could have changed their minds."  See (Doc. No. 1 at 17); see also (Doc. No. 15 at 13).

None of these arguments merit habeas relief.  In the first instance, and as explained more above, Culley does not discuss the state courts' determinations on this claim or attempt to explain why those determinations were unreasonable, which are sufficient reasons in themselves for the Court denying this ineffectiveness claim.  Additionally, and despite any argument by Culley to the contrary, see (Doc. Nos. 1 at 17; 15 at 13), the evidence in the record shows that the only evidence provided to him by the prosecution at the time of, or during trial, that trial counsel was unaware of beforehand, was an audio/video recording of law enforcement's interview with S.S.  See (Doc. No. 12-27 at 34 (testifying that the police interview of S.S. was "new material," and he already knew about the text messages and "the statement")).[41]  As such, Culley's ineffectiveness claim pertaining to late discovery/Brady is limited to the audio/video recording of S.S.'s police interview.

As for that recording, the state courts' determinations that trial counsel was not ineffective were reasonable.  The Superior Court reasonably determined that (1) Culley, as he

---

[40] In his reply brief, Culley asserts that trial counsel failed to review S.S.'s recorded interview with him. See (Doc. No. 15 at 13 (claiming that trial counsel never "show[ed] or discussed [the interview] with [him] to provide input, context or dispute [sic]").  This is yet another new ineffectiveness claim which Culley did not assert in his habeas petition; further, there is no indication in the record that he raised and exhausted this claim in the state courts.  Culley has waived the opportunity to present this claim, and he provides no justification for this Court to excuse his procedural default.  As such, the Court will not consider the claim here.

[41]  It appears that trial counsel possessed a summary of S.S.'s interview in a police report, but lacked the actual recording. See (Doc. No. 12-27 at 36).

44

has here, failed to identify any specific inconsistent statement or evidence that the interview revealed; (2) trial counsel extensively cross-examined S.S. on numerous inconsistencies in her testimony; (3) trial counsel had an adequate opportunity to review the audio/video recording of S.S.'s interview when the CCP gave him until the following day to review it as well as the opportunity to recall the victim or S.S. if he wanted to do so; and (4) trial counsel made a strategic decision not to recall S.S. to the stand. See Culley II, 2022 WL 16832485, at *5; see also (Doc. No. 12-24 at 166–69, 172–73, 175, 177–78 (showing discussions between the CCP and counsel for the parties relating to the belatedly disclosed recorded interview of S.S., the CCP allowing trial counsel until the next day to review the interview, the prosecution indicating that it was unopposed to the defense recalling S.S., and trial counsel's decision not to recall S.S. to the stand after having reviewed the evidence). Accordingly, Culley is not entitled to habeas relief on his second ineffectiveness claim.[42]

---

[42] The Court notes that although Culley contends that trial counsel should have moved for a mistrial due to the belated disclosure of S.S.'s recorded interview, it is unlikely that the CCP would have granted such a motion insofar as trial counsel had the opportunity to review the evidence and recall S.S. (or the victim) if he deemed it necessary. See, e.g., Commonwealth v. Mancuso, 357 A.3d 957, 999 (Pa. Super. Ct. 2026) (explaining that although a trial court "has the discretion to dismiss the charges" if a discovery violation occurs, such a sanction is reserved for "only the most extreme and egregious violations," and "[i]f the only prejudice to the defendant is surprise, a continuance is appropriate" (citations omitted)). In addition, although trial counsel testified at the PCRA hearing that he "believed he ma[d]e an error" regarding S.S.'s recorded interview, he never explained why he believed he made an error or specified which part(s) of S.S.'s interview he should have questioned her if he recalled her to the stand. See (Doc. No. 12-27 at 35–36). Finally, although trial counsel also testified at the PCRA Hearing that he spoke to a juror and the juror told him that "those issues may have been things that a jury would have considered," he never identified the "issues" and pointed out that the juror did not "admit[] to [him] that [the jury's] answers would have been different." See (id. at 35 (emphasis added)).

45

> **d.** **Trial Counsel's Failure to File a Motion to Suppress the Recorded Telephone Conversation Between Culley and the Victim**

For his third ineffectiveness claim, Culley contends that his trial counsel should have filed a motion to suppress the telephone conversation between him and the victim, which was recorded by the police. See (Doc. No. 1 at 18). The CCP determined that this claim was meritless, explaining as follows:

> [Culley] finds error in counsel's failure to seek the suppression of the recording of a phone call between himself and the victim, to which only the victim consented, and which, therefore – [Culley] asserts without supporting citation – was of doubtful admissibility. We disagree. The legislature has provided unambiguously for the lawful interception of electronic communications by or at the behest of a law enforcement officer, where, as here, "one of the parties to the communication has given prior consent." 18 Pa. C.S. § 5704(2)(ii). Counsel, having investigated this matter and consulted with his colleagues, "did not see a way" to construct a non-frivolous argument for suppression.[43] Nor, do we.

See (Doc. No. 12-16 at 11 (footnote in original)).

> As for the Superior Court, it also rejected Culley's claim as follows:

> [W]hile at the police station, the victim made a recorded phone call to Culley, with detectives present. During the phone call, Culley stated, "I don't want this to sound completely horrible, but did you like agree at all at first or did I like rape you." Culley contends that trial counsel was ineffective for failing to file a motion to suppress and/or adequately address this one-party consent phone call. Culley's Br. at 45.

> Where a petitioner alleges counsel ineffectively failed to file a suppression motion, "the inquiry is whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be meritorious." Commonwealth v. Johnson, 179 A.3d 1153, 1160 (Pa. Super. 2018). "Where the challenge is to a failure to move for suppression of evidence, the defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." Commonwealth v. Melson, 556 A.2d 836, 839 (Pa. Super. 1989).

---

[43] N.T. Hearing, at 30:20–31:16.

46

Here, trial counsel testified at the PCRA hearing that he investigated whether to file a motion to suppress the phone call and even consulted with his law partner and paralegal about it. N.T. PCRA Hearing, at 30–31. However, counsel stated they were ultimately unable to find any legal basis on which to file a suppression motion, and he did not want to file a frivolous motion. Id. at 31–32.

Pennsylvania is a generally a "two-party" consent state, meaning that all parties to a communication must consent to it being recorded. 18 Pa. C.S.A. §§ 5703, 5704(4). However, Section 5704 sets forth several exceptions, including subsection 2, which allows law enforcement to use wiretaps without obtaining prior judicial approval if one of the parties to the conversation consents to the interception. See 18 Pa. C.S.A. § 5704(2)(ii); see also Commonwealth v. Bellamy, 252 A.3d 656, 667 (Pa. Super. 2021).

. . . Culley fails to provide any legal analysis of any potential basis for the suppression of the wiretap evidence. He does not explain how the requirements of section 5704(2)(ii) were not met, or otherwise set forth an argument that a suppression motion would have been meritorious. Accordingly, Culley has failed to meet his burden and his claim of ineffectiveness fails. See Commonwealth v. Watley, 153 A.3d 1034, 1044 (Pa. Super. 2016) (stating counsel will not be found ineffective for failing to file a motion to suppress if the grounds asserted for that motion lack merit).[44]

See Culley II, 2022 WL 16832485, at *6–7 (footnote in original).

Presently, Culley posits several arguments in his habeas petition and reply brief in support of his general claim that trial counsel was ineffective for failing to move to suppress the recorded telephone call. Starting with Culley's petition, Culley argues that the telephone conversation "failed to meet the guidelines set forth in [18 Pa. C.S. § 5704(2)(ii)]" because a Cumberland County assistant district attorney failed to review "all of the facts of the case prior to authorizing such a call." See (Doc. No. 1 at 18). He claims that neither the "detective" nor the assistant district attorney reviewed the rape kit from the victim prior to the call; as such, the authorization for the call "was simply based on the conflicting stories of the [victim]." See (id.).

---

[44]  See also Commonwealth v. Spotz, 896 A.2d 1191, 1210 (Pa. 2006) (stating "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim").

47

He further claims that had counsel filed a motion to suppress, "it would have been upheld which would have eliminated the prosecutions [sic] whole case as their only evidence, that was taken out of context, would have been thrown out." See (id.).

In his reply brief, Culley appears to argue that the telephone recording also violated the Federal Wiretap Act and, regardless of whether federal or state law applied, police had no valid basis to record the call insofar as "there was no emergency situation, . . . no immediate danger of death or serious physical injury to any person, . . . no conspiratorial activities threatening national security, [or] conspiratorial activities characteristic of organized crime." See (Doc. No. 15 at 16–17).  He also indicates that police did not obtain a warrant before recording the call. See (id.).

Culley further argues that trial counsel failed to conduct any "investigation . . . whatsoever"; rather, "[h]e merely stated [during the PCRA hearing] that he consulted with his paralegal and a law partner and they saw no way to suppress the evidence and that to try would be frivolous and meritless." See (id.).  Culley contends that trial counsel should have investigated, inter alia, the following:

1.      Was [the] non[-]consenting party[, i.e., Culley,] at home?  5704(2)(iv) [sic]. Did law enforcement consider whether, or know, if [Culley] was in his home[?]  [U]nder this section different authorizations are required such as an order from the president Judge or their designee who shall also be a Judge in the [C]ourt of [C]ommon [P]leas, and based on investigation and affidavits.

2.      . . . [T]he certifications of the law enforcement personnel conducting the wiretap, who was from another borough due to a conflict of interest with Silver Spring Townships Officer authorized to perform wiretaps.

3.      . . . [T]he chain of custody as required by this statute.

4.      [I]f any [a]uthorizations by the District Attorney, in writing, designating an assistant district [a]ttorney existed or were given.

5.    [The existence of] . . . emergent or exigent circumstances as required.

See (id. at 17–18).  Culley also asserts that trial counsel should have investigated whether it was legal for an assistant district attorney, other than the one "for the case" to "respond to the police office for the purposes of this wiretap."  See (id. at 18).  And he once again claims that:

> The [assistant district attorney] did not have all the facts and did not examine the [r]ape kit which was present at the police office and was available for his examination of the [victim's] statements to [Nurse Gray] during the rape kit preparation and investigation.  The [victim's] interview with [Nurse Gray] had completely different statements contradicting her statements to the [assistant district attorney] and the police.  The two interviews were very different accounts of fact, mistruths and truth by the [victim] and would have given the [assistant district attorney] no reason to approve the wiretap, if he was properly authorized to do so.

See (id. at 18–19).

Like his first two ineffectiveness claims, Culley's third claim lacks merit.  He fails to identify how the state courts' determinations that counsel acted reasonably in not filing a motion to suppress were unreasonable in any respect.  The Superior Court's determination, in particular, is factually accurate, well-reasoned, and in accordance with the applicable law.  Overall, Culley has not satisfied his burden to show that "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision" regarding filing a motion to suppress the recorded statement.  See Dunn, 594 U.S. at 739–40 (quoting Harrington, 562 U.S. at 101).  As such, he is not entitled to habeas relief on this third claim.[45]

---

[45]  The Court also notes that Culley's assertion that trial counsel failed to conduct any investigation into the recorded telephone call is belied by the record.  See (Doc. No. 12-27 at 31–32 ("I had my paralegal look at it.  I looked at it.  Mr. Costopoulous[, trial counsel's law partner,] looked at it." (emphasis added)); id. at 32 (testifying that he "wanted a second opinion" about whether he could challenge the recorded telephone call because he "did not see a way" to challenge it, and acknowledging that "no one came up with any way that the recorded telephone call was obtained illegally or would have been potentially suppressible")).  Moreover, although Culley identifies topics relating to the recording that he believes trial counsel should have investigated, he fails to point to any part of the record that would show that such an investigation

49

### 2.     Prosecutorial Misconduct Claims

Culley asserts that the prosecutor committed prosecutorial misconduct by: (1) refusing to have the victim testify during Culley's preliminary hearing; (2) asserting that they never offered him a plea deal after receiving a counteroffer from his new trial counsel; (3) lying in an affidavit to cause the CCP to revoke his bail; (4) providing the defense with discovery of certain materials on the first day of trial; (5) not disclosing a "third interview" until the second day of trial; (6) including "inflammatory and prejudicial blatant lies" in their opening statement to the jury; and (7) relying on an unlawful recorded telephone call to support their case. See (id. at 10, 20–22). Respondents argue that, at a minimum, Culley's claims except for his claim relating to the prosecutor's opening statement, are unexhausted and procedurally defaulted, and he has failed to identify cause, prejudice, or a fundamental miscarriage of justice to excuse the procedural default of those claims. The Court will first address the exhaustion and procedural default issue before turning to the merits of any properly preserved claims.

---

would have revealed facts that would have led to a meritorious suppression motion. For instance, despite Culley asserting that trial counsel should have investigated the "chain of custody" or "the certifications of law enforcement personnel conducting the wiretap," see (Doc. No. 15 at 18), he fails to point to any evidence that such an investigation would have shown issues with the chain of custody or deficiencies in the certifications of the law enforcement personnel conducting the wiretap. Also, although Culley contends that trial counsel should have investigated whether he was at home at the time of the call, see (id. at 17), he points to no facts in the record showing where he was at the time of the call and, according to his trial testimony, he was not at home and instead at a VFW at the time of the call. See (Doc. No. 12-24 at 331 (testifying that he was at the VFW when he returned the victim's call); id. at 334–35 (testifying that he became "uncomfortable to continue having the conversation [with the victim]," which caused him to "step[] to . . . [a] separate area outside the bar area" to continue the conversation). Even if Culley was at home at the time of the call, the only way that the requirements of Section 5704(2)(iv), which would require an order from the president judge or their designee before the oral interception could occur, would have applied to his call would be if he and the victim were both in his home at the time of the call. See 18 Pa. C.S. § 5704(2)(iv) ("For the purposes of this paragraph, an oral interception shall be deemed to take place in the home of a nonconsenting party only if both the consenting and nonconsenting parties are physically present in the home at the time of the interception."). That was not the case here.

50

###### a.    Exhaustion and Procedural Default

Culley's first three prosecutorial misconduct claims are unexhausted.  He never raised on direct appeal or as part of his PCRA proceedings any claim pertaining to the prosecutor's failure to have the victim testify during the preliminary hearing, the prosecutor never offering him a plea deal after receiving a counteroffer from his new counsel, or the prosecutor lying in an affidavit to cause the CCP to revoke his bail.  See (Doc. Nos. 12-2 (stating issues raised in post-sentence motions); 12-7 (identifying issues raised in direct appeal brief); 12-12 at 3 (specifying issues raised in Culley's original pro se PCRA petition); 12-14 at 4, 6 (stating issues raised in counseled amended PCRA petition)); Culley I, 2019 WL 2564536, at *2, 3 (reciting issues raised on direct appeal); Culley II, 2022 WL 16832485, at *2 (stating issues raised on appeal from denial of amended PCRA petition).  Although Culley generally asserts that he exhausted these claims in his reply brief, see (Doc. No. 15 at 1–3, 4–5), and laments that he had "no control over the State Court system and how they choose to review appeals and relief issues or chose not to review them at all," he does not specify any location in the state court record in which he raised these claims with the state courts.  Thus, Culley's first three claims are unexhausted.

Culley has also procedurally defaulted these claims insofar as he could no longer proceed to file a PCRA petition raising the claims because of the PCRA's one-year time bar and waiver provisions, the latter of which would bar Culley from raising his prosecutorial misconduct claims because he could have raised them on direct appeal.  See 42 Pa. C.S. § 9545(b) (setting forth time for filing a PCRA petition); id. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); Commonwealth v. Wholaver, 177 A.3d 136, 174 (Pa. 2018) (holding that claims of prosecutorial misconduct that a petitioner

51

could have raised on direct appeal are waived for purposes of the PCRA).  As such, the Court may consider these claims only if Culley shows cause and prejudice or a fundamental miscarriage of justice.  He fails to do so here.

The only excuse Culley briefly mentions in his reply brief is that he supposedly "had no control [over] how [his] counsel presented the issues."  See (Doc. No. 15 at 4).  The Court recognizes that, in general, attorney errors in collateral proceedings do not establish cause to excuse a procedural default unless the petitioner can meet the narrow exception to this general rule set forth in Martinez.

Here, Culley falls far short of showing that his procedural default is excused under Martinez.  When elaborating on his contention that he had no control over his counsel, he discusses the actions of his direct appeal counsel, and Martinez focuses on the actions of counsel in collateral proceedings, not on the conduct of direct appeal counsel.  See 566 U.S. at 9; see also Davila v. Davis, 582 U.S. 521, 529–30 (2017) (concluding that Martinez does not extend to claims of direct appeal counsel ineffectiveness).  Also, Martinez does not apply to claims of prosecutorial misconduct or Brady violations.  See Teats v. Genovese, No. 22-5365, 2022 WL 22317601, at *5 (6th Cir. Nov. 4, 2022) (unpublished) ("Martinez applies only to claims of ineffective assistance of trial counsel and not to other claims, such as those pertaining to prosecutorial misconduct and Brady violations."); Brooks v. Armel, No. 20-cv-02885, 2021 WL 7967620, at *8 (E.D. Pa. Nov. 30, 2021) ("Because Brooks' final claim alleges only prosecutorial misconduct, Martinez is inapplicable." (citing Wanamaker v. Smith, No. 20-cv-01332, 2021 WL 601543, at *20–21 (E.D. Pa. Feb. 16, 2021))), report and recommendation adopted, 2022 WL 1028056 (E.D. Pa. Apr. 6, 2022).

Furthermore, to the extent that Culley is somehow invoking the fundamental miscarriage of justice exception, he fails to make such a showing insofar as he provides no evidence in support of his first three prosecutorial misconduct claims. He identifies no evidence that the prosecutor refused to have the victim testify during his preliminary hearing,[46] lied in an affidavit to cause the CCP to revoke his bail, or failed to offer him a plea deal after receiving a counteroffer from his new trial counsel. Even if he did, he does not explain how any of these acts constitute prosecutorial misconduct. He does not cite to any law providing that a prosecutor must have a victim testify during a preliminary hearing, and the Court notes that the prosecutor's burden at a preliminary hearing is merely to "establish[] at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it." See Commonwealth v. Hilliard, 172 A.3d 5, 10 (Pa. Super. Ct. 2017). It is possible that a prosecutor could satisfy this burden without having the victim testify.

Culley also fails to acknowledge that a prosecutor need not offer him a plea deal at all, and in the realm of contract law, a counteroffer terminates the original offer. See Toppy v. Passage Bio, Inc., 285 A.3d 672, 682 (Pa. Super. Ct. 2022) (citing Yarnall v. Almy, 703 A.2d 535, 539 (Pa. Super. Ct. 1997)). Accordingly, the fundamental miscarriage of justice exception does not excuse Culley's procedural default of his first three prosecutorial misconduct claims.

As for Culley's remaining prosecutorial misconduct claims, i.e., that the prosecutor committed misconduct by (1) providing discovery on the first day and during trial, (2) misstating facts in their opening statement to the jury, and (3) relying on an allegedly unlawful recorded telephone call to support their case, he never raised these prosecutorial misconduct claims during

---

[46] According to the publicly available docket sheet for Culley's proceedings before the Magisterial District Judge, Culley waived his preliminary hearing. See Commonwealth v. Culley, No. MJ-09304-CR-0000730-2016 (Magis. Dist. Ct. filed Dec. 15, 2016).

53

the trial or on direct appeal.  See (Doc. No. 12-2 (stating issues raised in post-sentence motions); 12-7 (identifying issues raised in direct appeal brief); Culley I, 2019 WL 2564536, at *2, 3 (reciting issues raised on direct appeal).  By failing to do so, he waived those issues.  See 42 Pa. C.S. § 9544(b); see also Pa. R. App. P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

However, Culley undoubtedly raised claims pertaining to the late discovery, the prosecutor's opening statement, and the recorded telephone call through his ineffective assistance of counsel claims in his PCRA proceedings.  See Culley II, 2022 WL 16832485, at *2. Although this is a close question, the Court finds that the instant prosecutorial misconduct claims are the substantial equivalent of Culley's ineffective assistance claims presented to the state courts during his PCRA proceedings and on appeal.  See Picard, 404 U.S. at 278 ("[T]he substance of a federal habeas corpus claim must first be presented to the state courts."); see also McCandless, 172 F.3d at 261 (holding that petitioner must present both "factual and legal substance" of claim to state courts).  Therefore, the Court will address those remaining claims on the merits.

### b.      Late Discovery

Culley contends that the prosecutor committed misconduct, and violated Brady, by disclosing certain evidence on the first day of trial and the second day of trial.  See (Doc. No. 1 at 20).  These two claims are meritless.

As the state courts determined either expressly or implicitly, see (Doc. No. 12-16 at 10–11); Culley II, 2022 WL 16832485, at *4–5, there was no Brady violation in this case.  "A Brady violation occurs if the government does not disclose evidence favorable to the defendant that is material to either guilt or innocence, and this failure prejudices the defendant."  United States v.

54

Zayas, 32 F.4th 211, 230 (3d Cir. 2022) (citing Brady, 373 U.S. at 87); see also United States v.

Risha, 445 F.3d 298, 303 (3d Cir. 2006) (explaining that, under Brady, "the prosecution's

suppression of evidence favorable to a criminal defendant violates due process when the

evidence is material to guilt or punishment" (citing Brady, 373 U.S. at 87)); Lambert v.

Blackwell, 387 F.3d 210, 252 (3d Cir. 2004) (explaining that, to prove a Brady violation, a

petitioner must show "(1) the government withheld evidence, either willfully or inadvertently;

(2) the evidence was favorable, either because it was exculpatory or of impeachment value; and

(3) the withheld evidence was material"). The "prejudice inquiry turns on whether the defendant

received a fair trial, one resulting in a verdict worthy of confidence, in the absence of the

evidence." See id. (citing United States v. Bansal, 663 F.3d 634, 670 (3d Cir. 2011)).

Here, the prosecution appears to have produced certain evidence, all of which appears to

be impeachment evidence, to the defense on either the first day of trial or during the second day

of trial.[47]  In both instances, there was no due process (or Brady) violation because the

prosecution made the evidence available to the defense in a way that they could effectively use

it.  See United States v. Fallon, 61 F.4th 95, 123 (3d Cir. 2023) ("Where the government makes

Brady evidence available during the course of a trial in such a way that a defendant is able to

effectively use it, due process is not violated and Brady is not contravened." (quoting United

States v. Johnson, 816 F.2d 918, 924 (3d Cir. 1987))).  "Thus, [the Court] must consider whether

[the defendant] was 'able to use the material and suffered prejudice from an untimely

---

[47]  It is unclear from the record precisely which evidence the prosecution disclosed to the defense on the first day of trial.  Nevertheless, as already explained, trial counsel testified at the PCRA hearing that he already possessed or was aware of all the evidence disclosed except for the audio/video recording of S.S.'s interview with law enforcement.

disclosure.'" United States v. Edwards, No. 22-3306, 2024 WL 4035909, at *1 (3d Cir. Sept. 4, 2024) (unpublished) (quoting Fallon, 61 F.4th at 123).

Culley fails to identify any evidence in the record showing that the defense was unable to use whatever material the prosecution disclosed on the first day at trial, which is unsurprising considering that trial counsel testified that he either had, or was aware of, this evidence beforehand. As for S.S.'s recorded interview, even though S.S. had already testified and been cross-examined by trial counsel prior to the prosecution disclosing the interview to the defense, the trial court agreed to allow trial counsel to review the evidence overnight and would have permitted trial counsel the opportunity to recall S.S. to the stand if he wanted to do so. Trial counsel reviewed the recorded interview and ultimately made the strategic decision not to recall S.S. to the stand. Therefore, Culley was able to use the material but decided not to do so. Culley further has failed to show that he suffered any prejudice from the untimely disclosure insofar as he fails to demonstrate how the belatedly disclosed evidence would have contradicted the testimony at trial. Accordingly, Culley has failed to show that the state courts' determinations were contrary to or involved an unreasonable application of clearly established case law or were based on an unreasonable determination of the facts, and, as such, the Court will deny Culley's request for habeas relief on his two prosecutorial misconduct claims related to the prosecution's late disclosure of evidence.

### c.    Opening Statement

Culley argues that the prosecutor's opening statement was "riddled with extremely inflammatory and prejudicial blatant lies," including that his "semen was found inside of the victim" even though "the serology report very clearly ruled [him] out as a donor" and that S.S. could hear the victim "screaming for help." See (Doc. No. 1 at 20); see also (Doc. No. 15 at 19).

56

The CCP, which addressed only Culley's argument relating to the prosecutor's comment about his semen and the victim, rejected his ineffectiveness claim as follows:

> Assuming arguendo that the Commonwealth's statement was factually untrue, so as to lend arguable merit to [Culley]'s claim, and that [trial counsel] lacked any reasonable basis for failing to respond to that falsehood, it is plain that [Culley] suffered no prejudice.  He admitted to having sexual relations with the victim; indeed, that the encounter was consensual was the crux of his defense.[48]  Further, while [Culley] specifically – if immaterially – denied ejaculating,[49] such that the Commonwealth's assertion might be viewed as having a discrediting effect, the victim herself corroborated [Culley]'s testimony on this topic.[50]  An unrebutted false statement, if such there was here, speaking neither to any material fact nor to the credibility of any witness can work no prejudice.[51]

See (Doc. No. 12-16 at 7–8 (footnotes in original)).

The Superior Court "agree[d] with the [CCP] that Culley sustained no prejudice" by the prosecutor's statement about the presence of his semen on the victim.  See Culley II, 2022 WL 16832485, at *8.  It explained that "[t]he presence or absence of Culley's DNA on the victim was inconsequential because Culley admitted having sexual intercourse with the victim.  Further, any misstatement by the Commonwealth was clarified by the testimony of the DNA expert, as well as defense counsel's argument."  See id.

Here, the Court will not consider Culley's claim pertaining to the prosecutor's alleged comment about S.S.'s testimony during her opening statement because he failed to exhaust this

---

[48]  [N.T. Trial] at 322:1–323:13.

[49]  Id., at 327:12–13.

[50]  Id. at 79:14–16.

[51]  Having thus resolved the issue on other grounds, we need not consider whether the Commonwealth's statement that [Culley]'s semen "was present" is a fair representation of Weaver's testimony that the DNA in question occurs in the general population at a frequency of 0.000104%, such that [Culley] "[cannot] be excluded" as having contributed to the sample.  Id., at 212:11–17.

claim in the state courts.  He failed to raise it in his pro se PCRA petition, see (Doc. Nos. 12-12

at 3 (listing claims)), in his counseled amended PCRA petition, see (Doc. No. 12-14 at 4, 6

(stating claims)), or during his testimony at the PCRA hearing, see (Doc. No. 12-27 at 12, 14–

15), which meant that neither the CCP nor the Superior Court ever addressed it.  See (Doc. No.

12-16 at 7–8); Culley II, 2022 WL 16832485, at *7–8.  Culley also can no longer raise this

claim, see 42 Pa. C.S. § 9544(b); as such, it is procedurally defaulted, and Culley has not

identified a reason to excuse his procedural default.

As for Culley's claim pertaining to the prosecutor's comment about the presence of his

semen, Culley does not argue that the state courts' determinations were based on an

unreasonable determination of the facts in light of the evidence presented during his PCRA

proceedings.  This limits Culley's avenue for relief to his ability to show that the state courts'

determinations were contrary to, or involved an unreasonable application of clearly established

case law relating to prosecutorial misconduct in the context of a prosecutor's opening statement

to a jury.

The clearly established federal law concerning prosecutorial misconduct in an opening

statement is as follows:

> Allegations of prosecutorial misconduct are reviewed under the standards for
> fundamental fairness as guaranteed under the Due Process Clause.  Darden v.
> Wainright, 477 U.S. 168, 181–82 [(1986)].  To constitute a due process violation,
> the prosecutorial misconduct must be "'of sufficient significance to result in the
> denial of the defendant's right to a fair trial.'"  United States v. Bagley, 473 U.S.
> 667, 676 [(1985)] (quoting United States v. Agurs, 427 U.S. 97, 108 [(1976)]).  The
> relevant question is whether the prosecutor's comments so infected the trial with
> unfairness so as to make the resulting conviction a denial of due process.  Donnelly
> v. DeChristoforo, 416 U.S. 637, 643 [(1974)].  In making this determination, the
> statements or conduct at issue cannot be viewed in isolation.  Rather, a court must
> assess the strength of the evidence against the defendant and decide whether the
> prosecutor's statements plausibly could have tipped the scales in favor of the
> prosecution.  United States v. Young, 470 U.S. 1, 11 [(1985)].  In other words, "the
> court must consider the probable effect the prosecutor's [statements] would have

on the jury's ability to judge the evidence fairly." Id.[; s]ee also Commonwealth v. Duffy, 83[2] A.2d 1132 (Pa. Super. 2003) ("Prosecutorial misconduct occurs when the effect of the prosecutor's comments would be to prejudice the trier of fact, forming in its mind fixed bias and hostility toward the defendant so that it could not weigh the evidence objectively and render a true verdict.")[.]

See Wright v. Pennsylvania, No. 19-cv-00844, 2021 WL 8945614, at *12 (W.D. Pa. May 18, 2021), report and recommendation adopted, 2022 WL 2292776 (W.D. Pa. June 24, 2022).

Culley has not shown that the state courts' determinations were contrary to or involved an unreasonable application of this clearly established federal law. As the state courts explained, even if the prosecutor's statement was factually inaccurate, Culley testified that he and the victim engaged in consensual sexual relations, the DNA expert testified about whether Culley's semen was present on the victim (or, more specifically, whether he could be excluded as contributing to the sample), and trial counsel argued to the jury in his closing that the sex between Culley and the victim was consensual. Therefore, the prosecutor's statement, even if factually inaccurate, did not prejudice Culley by tipping the scales in favor of the prosecution. See Young, 470 U.S. at 11. Accordingly, the Court will not grant Culley habeas relief on this claim.

### d.    Recorded Telephone Call

Because the Court has already discussed Culley's arguments as well as the state courts' determinations relating to his ineffective assistance of counsel claim regarding his recorded telephone call with the victim, the Court will not repeat them here. As with his ineffectiveness claim, Culley fails to show that the state courts' determinations were based on an unreasonable determination of the facts in light of the evidence presented during his PCRA proceedings, or that they were somehow contrary to, or involved an unreasonable application of clearly established federal law. Overall, Culley's arguments, even if the Court considered them under a

59

de novo standard of review, fail because he fails to show that any prosecutorial misconduct occurred.[52]

Pennsylvania is "generally a 'two-party' consent state, meaning that all parties to a communication must consent to it being recorded." See Culley, 2022 WL 16832485, at *7 (citing 18 Pa. C.S. § 5703). However, 18 Pa. C.S. § 5704 provides several exceptions to this rule, see id., including an exception specifically related to law enforcement:

> (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:
>
> . . .
>
> (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception . . . .

See 18 Pa. C.S. § 5704(2)(ii).

Culley admits that an assistant district attorney approved the interception, see (Doc. No. 1 at 18), but he believes that the assistant district attorney did so without having all the facts, such as the victim's rape kit. See (id.). However, Section 5704(2)(ii) does not require the assistant

---

[52]  To the extent that Culley argues in his reply brief that the prosecutor committed prosecutorial misconduct because the recorded conversation violates the Federal Wiretap Act, see (Doc. No. 15 at 16–17), this claim is unexhausted and procedurally defaulted because he never raised it with the state courts, is barred from doing so now, and has not demonstrated that any procedural default should be excused. Also, the Federal Wiretap Act provides for one-party consent. See 18 U.S.C. § 2511(2)(c) ("It shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.").

district attorney to know or review all the facts; rather, they must have reviewed the facts and be satisfied that the consenting party's consent is voluntary. See 18 Pa. C.S. § 5704(2)(ii). Furthermore, Culley points to no evidence that the assistant district attorney did not review the facts available to them or that the victim did not voluntarily consent to the call. In fact, he does not identify any evidence showing that there were any issues with the oral interception of his call with the victim. Accordingly, this prosecutorial misconduct claim lacks merit.

### e. Cumulative Prosecutorial Misconduct

Culley asserts that he was prejudiced by cumulative instances of prosecutorial misconduct, which tainted the trial and resulted in his guilty verdicts. See (Doc. No. 1 at 21). This Court is unaware of any decision recognizing cumulative prosecutorial misconduct as a ground for habeas relief. Instead, the cumulative error doctrine applies to ineffective assistance of counsel claims and provides that:

> The cumulative effect of multiple errors may warrant habeas relief. [Marshall v. Hendricks, 307 F.3d 36, 94 (3d Cir. 2002).] "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" [Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993))]. But to find cumulative error "requires the existence of 'errors' to aggregate. Absent such errors by counsel, the cumulative error doctrine does not apply." [Aponte v. Eckard, No. 15-561, 2016 WL 8201308, at *20 (E.D. Pa. June 3, 2016), report and recommendation adopted, 2017 WL 467633 (E.D. Pa. Feb. 3, 2017)].

See Haitos v. Hainsworth, No. 14-cv-00372, 2025 WL 2884815, at *7 (M.D. Pa. Oct. 9, 2025) (internal footnotes replaced with citations).

Assuming arguendo that this Court should, or could, consider prejudice from prosecutorial misconduct cumulatively, Culley has not shown that there is any prejudice to be

accumulated because he fails to show any misconduct by the prosecution in his criminal case.

Accordingly, Culley's creative cumulative prosecutorial misconduct claim also fails.

### C.  Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability [("COA")], an appeal may not be taken to the court of appeals from . . . the final order in a habeas proceeding in which the detention complained of arises out of process issued by a State court[.]"  28 U.S.C. § 2253(c)(1)(A).  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  See id. § 2253(c)(2).  When deciding whether to issue a COA after a denying a Section 2254 petition on the merits, the Court applies the following standard: "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, jurists of reason would not find the disposition of this case debatable, i.e., that Culley's claims do not warrant habeas relief because they are either meritless or unexhausted and procedurally defaulted.  Accordingly, the Court will not issue a COA in this case.

## IV.  CONCLUSION

For the reasons stated above, the Court will dismiss in part and deny in part Culley's Section 2254 habeas petition, decline to issue a certificate of appealability, deny his motion for a status conference as moot, and direct the Clerk of Court to close this case.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

62